**Lane McGATH, Plaintiff–Appellant,**

v.

**AUTO–BODY NORTH SHORE, INCORPORATED, Louis J. Babbini and Anna M. Babbini, Defendants–Appellees.**

No. 92–2728.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 26, 1993.

Decided Oct. 19, 1993.

Scott L. Schroeder (argued), C. James Heft, Constace A. Staaden, Racine, WI, for plaintiff-appellant.

James W. Naisbitt, Albert L. Grasso (argued), Stephen A. Glickman, Chuhak & Tecson, Chicago, IL, for defendants-appellees.

Before POSNER, Chief Judge, RIPPLE, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

RIPPLE, Circuit Judge.

Lane McGath alleged that amendments made to his employer's pension plan violated Employee Retirement Income Security Act (ERISA) § 510, 29 U.S.C. § 1140, and were made in violation of his employer's fiduciary duties. A magistrate judge granted summary judgment to the defendants. Mr. McGath appeals from that judgment, and we affirm.

## I

## BACKGROUND

### A. Facts

Louis and Anna Mae Babbini own and operate Auto Body North Shore, Inc. On July 18, 1983, Lane McGath was hired by Auto Body. Auto Body maintained an ERISA-qualified pension plan for its eligible employees. The Babbinis were designated as the trustees of the plan. At the time Mr. McGath was hired, employees had to satisfy four requirements before their participation in the plan could commence. The plan required an employee to: (1) complete one year of service; (2) be at least twenty-one years of age; (3) be less than fifty years of age at the date of hire; and (4) not be a member of a union that has negotiated for or is providing retirement benefits. R. 1, App. 1 at 8. Mr. McGath was born on January 3, 1934, and thus, at the time he was hired, he was forty-

nine years old. Additionally, he was never a member of a collective bargaining unit while employed at Auto Body.

Mr. McGath was slated to complete one year of employment with Auto Body on July 18, 1984, and it appeared that he had satisfied all of the prerequisites for participation in the pension plan. Thus, after July 18, 1984, Mr. McGath became eligible to participate in the plan. The entry dates of the plan, however, were October 1 and April 1. According to the terms of the plan, because Mr. McGath had become eligible to participate on July 18, 1984, his applicable entry date to the plan was October 1.

At some point between July 18, 1984, and September 30, 1984, the Babbinis realized that Mr. McGath had become eligible to enter the plan. They grew concerned that the plan could not financially survive Mr. McGath's entry. To this end, on September 30, 1984, the Babbinis amended the plan to require three years of service before plan eligibility could be satisfied. Thus, the amendment denied plan eligibility to Mr. McGath at that time.

Mr. McGath continued to work for Auto Body, and on July 18, 1986, he completed three years of service with the company. Mr. McGath's applicable entry date was October 1. On September 30, 1986, one day before Mr. McGath would have entered the plan, the Babbinis once again amended the eligibility requirements. The new amendment stated: "Participation in the Plan shall be limited to those Employees who meet the eligibility requirements as of September 30, 1986." R. 1, App. 3. Because Mr. McGath was over fifty years old as of September 30, 1986, the amendment excluded him entirely from plan eligibility.

Mr. McGath worked for Auto Body until September 18, 1989, when he notified the company that he would retire. His employment was then terminated. Believing that he was entitled to pension benefits under the unamended requirements, Mr. McGath claimed benefits under the original plan, but his claim was denied.

## B. District Court Proceedings [1]

Mr. McGath then filed suit against Auto Body and the Babbinis in the district court. He alleged that the defendants had interfered with his attainment of pension rights by deliberately discriminating against him in violation of ERISA § 510, 29 U.S.C. § 1140. In support of this claim, Mr. McGath contended that other employees had been allowed to enter the plan even though they had not satisfied the eligibility requirements. He also claimed that the defendants had breached their fiduciary duties in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), and sought liability against them pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a). In their depositions in preparation for trial, the Babbinis admitted that they had amended the plan to prevent Mr. McGath from becoming eligible for benefits. They believed that his entry would increase the costs of the plan beyond what they could afford, and this belief was the catalyst for the amendments.

The district court refused to find a violation of § 510. It noted that § 510 protects only against actions that affect the employment relationship in an effort to deny plan rights. Because the Babbinis' amendments affected only the terms of participation in the plan and did not affect Mr. McGath's employment with Auto Body, no violation of the statute had occurred. Moreover, the court found that the defendants had not breached their fiduciary duties. When an employer serves as plan administrator and amends the plan to restrict eligibility, the court found that the employer is not engaging in administration of the plan and thus is not required to act in the best interest of the plan participants and beneficiaries. Accordingly, the court found it unnecessary to address Mr. McGath's allegations that other employees had been allowed to enter the plan in contravention of its eligibility requirements; because Mr. McGath neither demonstrated how their inclusion had injured him nor had alleged that he was led to believe the requirements would be waived for him, the court did not find that his allegations raised any genu-

ine issues of triable fact. The district court entered summary judgment for the Babbinis and Auto Body, and Mr. McGath appeals from that determination. For the reasons that follow, we affirm.

## II

## ANALYSIS

### A. ERISA § 510: Interference with Protected Rights

Mr. McGath first submits that the defendants' plan amendments were in violation of ERISA § 510. That section reads in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

Mr. McGath contends that he—and he alone—was the object of the defendants' discrimination. He notes that the plan was changed, not once but twice, in order to preclude his participation. He points to the deposition testimony of Louis Babbini that the plan was changed to ensure that he would not be able to participate because, given his age, his participation would cost the plan more money than the company could afford. He also notes that Anna Babbini testified similarly. Furthermore, Mr. McGath submits that other Auto Body employees were allowed into the plan without first satisfying the eligibility provisions.

■ We turn first to Mr. McGath's contention that § 510 has been violated by the defendants' actions in revising the plan with the specific intent to eliminate his potential participation. Mr. McGath is correct that, while there was passing mention in the deposition testimony that other employees would soon be eligible for the plan and their participation would also spoil its actuarial premis-

1. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before a magistrate judge.

es,[2] it is clear that the plan was amended primarily to prohibit Mr. McGath's participation.[3]

In *Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir.1990), this circuit determined that the focus of § 510 is not on amendments to the plan itself. Rather, we held that

> [i]t is clear from the text of the statute ... that § 510 was designed to protect the employment relationship against actions designed to interfere with, or discriminate against, the attainment of a pension right.... Simply put, § 510 was designed

to protect the employment relationship which *gives rise* to an individual's pension rights.... This means that a fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship, and not merely the pension plan, was changed in some discriminatory or wrongful way.

*Id.* (emphasis in original).

While there appear to be some courts that have interpreted § 510 to encompass discrimination in the plan itself rather than the employment relationship, our study of those cases[4] has provided us with no basis to

2. Anna Babbini was questioned at her deposition regarding this issue:

> Q. And there were no other employees that were similarly situated that had caused a concern and were taken into consideration with closing the plan, correct?
> A. [Anna Babbini] Not immediately, but there was that would be coming up.
> Q. Well, when you say coming up?
> A. Meaning that they had not worked for us as long. So that their entry into the plan would not have been immediate entry into the plan, but in another year or two years they would have been in the plan and would have cost us also more money than we could afford to put in.
> R.41, Anna Babbini's Deposition at 29.

3. Louis Babinni's deposition proceeded as follows:

> Q. Why was the plan changed?
> A. [Louis Babinni] Because I just couldn't afford it anymore.
> Q. When you say you couldn't afford it, what part of it couldn't you afford?
> A. I couldn't afford to fund money for an employee that was working for me.
> Q. What employee was that?
> A. Mac, Lane McGath.
> Q. And that's why the plan was changed?
> A. Right. Yes.
> Q. And you specifically changed the plan to prevent Lane McGath from getting into the plan, right?
> A. Right.
> R.41, Louis Babinni's Deposition at 19. Anna Babbini also acknowledged the purpose behind the amendments:
> Q. Now, were you involved in the discussions, prior to the plan being amended October 1, 1984, were you involved in the discussions with Karel & Associates discussing about amending the plan?
> A. [Anna Babbini] Yes.
> Q. Were the plans specifically amended so Lane McGath would not gain entry into the plan?

> A. Yes.

> Q. So this decision to close the plan and exclude Lane McGath from entry into the plan was made strictly as a business decision, correct?
> A. Yes.
> Q. And that was made strictly because it would cost Auto Body North Shore, Inc. too much money to fund the plan if Lane McGath got into the plan, correct?
> A. Yes.
> R.41, Anna Babbini's Deposition at 16, 22.

4. As the district court acknowledged, *Aronson v. Servus Rubber, Division of Chromalloy*, 730 F.2d 12, 16 (1st Cir.), *cert. denied*, 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 357 (1984), suggests a view contrary to *Deeming*. There, the court, while speaking of pension termination rather than any employment action, noted that § 510 prohibits

> discriminatory conduct directed against individuals, not to actions involving the plan in general.... This is not to say that a plan could not be discriminatorily modified, intentionally benefitting, or injuring, certain identified employees or a certain group of employees, but a partial termination cannot constitute discrimination per se. A termination that cuts along independently established lines—here separate divisions—and that has a readily apparent business justification, demonstrates no invidious intent.

*Id.*

In *McGann v. H & H Music Co.*, 946 F.2d 401 (5th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992), the Fifth Circuit was faced with interpreting § 510. It specifically declined to reach our holding in *Deeming* and instead rested on the fact that there was no showing that the defendant had been promised benefits at a certain level or that the plan alteration was aimed at a single individual as opposed to all who might contract the same disease. The court found it unnecessary to decide whether a prerequisite of any § 510 violation must be a change in the employment rela-

depart from the established precedent of this circuit—precedent that, in our view, is supported by the statute's legislative history and the opinions of other courts. As our colleagues in the Sixth Circuit have noted, "Congress designed § 510 primarily to protect the employment relationship that gives rise to an individual's pension rights." *West v. Butler*, 621 F.2d 240, 245 (6th Cir.1980). As further elaboration, the court noted: "The legislative history reveals that the prohibitions were aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Id.* In *Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3d Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987), the Third Circuit recognized the same basic theme: "Congress enacted § 510 primarily to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.' " (quoting *West*, 621 F.2d at 245) (footnote omitted).

■ Although we believe that the protections of § 510 are properly limited to employment situations that affect pension rights, we do not want to be misunderstood as adhering to a restrictive interpretation of that section. While the Supreme Court's decision in *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 143, 111 S.Ct. 478, 485, 112 L.Ed.2d 474 (1990), teaches that termination of employment to prevent a pension from vesting is "prototypical" of the claims that Congress intended to cover by enacting § 510, it must be remembered that the Court also emphasized that, "Congress viewed [§ 510] as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits." *Id.* Therefore, we must be mindful that § 510 protects the employee not only against the classical forms of employer harassment that might occasion the loss of benefits, but also against the more atypical forms of employer misconduct that can produce the same result.

As we noted earlier, Mr. McGath urges us to conclude that he has been the victim of such a form of employer misconduct. Although he was not fired, suspended, or in any way disciplined by his employer, he contends that he has been the victim of a subtle form of discrimination intended to interfere with his pension rights. He stresses that, in addition to amending the plan to exclude him, the employer also discriminated against him by bending the plan's eligibility requirements to permit other employees entry, while he was held to the exacting letter of the plan's terms. He submits that there is a genuine issue of triable fact as to whether such discrimination took place. He bases this allegation on the deposition testimony of his employers and computer records that, on their face, indicate that a few individuals were permitted to enter the plan without first

---

tionship, not just an alteration in the pension plan. 946 F.2d at 406 n. 8.

In entertaining the possibility that a violation of § 510 could be premised upon discrimination against a single employee instead of a group, the Fifth Circuit noted the case of *Vogel v. Independence Federal Savings Bank*, 728 F.Supp. 1210 (D.Md.1990), the only authority the parties before us and, to our knowledge, any court has been able to cite as embracing such a position. In *Vogel*, the plaintiff, Vogel, a member of the Board of Directors of a bank, was covered under the bank's life and health insurance policy. Vogel suffered a stroke and, for a significant period of time, the bank continued to pay his premiums, and his medical bills were paid under the plan. Finally, he was removed from the Board but the bank continued to pay the premiums. After several months, however, it decided to change insurance carriers. The new policy covered everyone except Vogel. In declining to grant summary judgment for the defendants, the district court concluded that circumstantial evidence existed from which a jury could conclude that the defendants had specifically intended to deprive Vogel of his benefits. *Id.* at 1226.

It is not at all clear that *Vogel* ought to be read as broadly as the defendants here suggest. Notably, in *Vogel*, the plaintiff was discharged from his position before he was excluded from the new policy which, according to the court, "covered all previously covered employees of Independence except Leonard Vogel." 728 F.Supp. at 1216. The court explicitly noted that the parties disputed whether Vogel was an employee of the bank at the time that his insurance was terminated. 728 F.Supp. at 1225.

A Second Circuit case, *Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2d Cir.1988), while confirming that § 510 prohibits employment discrimination that is at least partially based on an intent to discriminate with respect to benefits, does not address the issue of the scope of the statute.

having fulfilled the qualifications for participation. To rebut that inference, the employer submitted the deposition of the plan's actuary. The employer characterizes this testimony as establishing that the computer entries were "glitches" that were common and explainable in the normal course of business.

We have examined the transcript of this testimony with great care. With respect to many of the "glitches"—most notably those pertaining to Anna Marie Babbini—the testimony is unequivocal. The actuary stated that the "glitches" did not reflect the actual date that the employee entered the plan. With respect to another employee, Bruce Miklautsch, however, the testimony of the actuary is equivocal, and it cannot be said that it directly contradicts the allegation that this employee was permitted to participate in the plan before meeting all of the eligibility criteria.

From this testimonial disparity, Mr. McGath asks us to hold that a genuine issue of triable fact exists as to whether his employer discriminated against him in refusing to allow him entry to the plan. An assessment of this factual issue would be difficult. While the testimony of the actuary is indeed equivocal, we note that the event in question took place under different circumstances and is significantly removed in time from Mr. McGath's exclusion from the plan. While discrimination can certainly be proven through circumstantial evidence, it is a close question as to whether such a slender thread could be considered sufficient to raise a genuine issue of fact or whether it simply raises a "metaphysical doubt." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir.1992).

■ We need not address, however, this nettlesome issue because, even if Mr. McGath were able to show such disparate treatment, we do not believe that § 510 provides him any relief. Because the employer, as the settlor of the plan, had the right to change the plan's terms, Mr. McGath cannot claim that the alleged discriminatory injury flows from the plan amendments. Because the plan must be administered according to its terms,[5] he cannot complain because he is held to those terms; this is true even if the rules were bent for another individual. ERISA § 510 affords protection from discrimination that interferes "with the attainment of any right to which such participant may become entitled under the plan." Mr. McGath does not have a *right* to treatment that is contrary to the terms of the plan, even if those terms are breached for others.

### B. *Breach of Fiduciary Duties*

■ Mr. McGath also argues that the Babbinis and Auto Body violated their fiduciary duties to him by amending the plan to exclude him from participation. We cannot accept this contention. Under ERISA, an individual is a fiduciary with respect to a plan if he exercises discretionary authority over the *management or administration* of that plan. 29 U.S.C. § 1002(21)(A) (emphasis added).[6] As the Third Circuit wrote in *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir.1990), "[f]iduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions." As we have recently noted, an employer's duty to *manage* a plan is a separate function from its ability to *establish and amend the terms* of a plan. *Schlitz Brewing Co. v. Milwaukee Brewery Workers' Pension Plan*, 3 F.3d 994 at 1001, 1002 (7th Cir.1993). An employer can wear two hats: one as a fiduciary administering a pension plan and the other as the drafter of a plan's terms. Therefore, because the functions are

---

**5.** "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

. . . .

(D) *in accordance with the documents and instruments governing the plan . . . .*"
ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) (emphasis added); *see also Kennedy v. Connecti-*

cut Gen. Life Ins. Co., 924 F.2d 698, 700 (7th Cir.1991) (stating that "ERISA instructs courts to enforce strictly the terms of the plans").

**6.** 29 U.S.C. § 1104(a)(1) states that the fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . ."

distinct, an employer does not act as a fiduciary when it amends or otherwise sets the terms of a plan. *Id.* (collecting cases); *Hozier*, 908 F.2d at 1161 (collecting cases); *see United Indep. Flight Officers, Inc. v. United Airlines, Inc.*, 756 F.2d 1262, 1268 (7th Cir. 1985) (imposing fiduciary status on union in negotiating plan would unreasonably cramp legitimate negotiations); *see also Young v. Standard Oil (Indiana)*, 849 F.2d 1039 (7th Cir.) (stating that an employer does not owe its employees a fiduciary duty when it amends or abolishes a severance plan), *cert. denied*, 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988). Because the defendants here were not acting as fiduciaries when they amended the plan, they breached no fiduciary duties allegedly owed Mr. McGath when they altered the plan's eligibility requirements.

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.