Marsha L. TARVER, Plaintiff,

v.

NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE; and North American Company for Life and Health Insurance Employees Separation Pay Plan, Defendants.

No. 95 C 3283.

United States District Court,
N.D. Illinois,
Eastern Division.

March 6, 1996.

Charles W. Beacham, Charles W. Beacham & Associates, Chicago, IL, for plaintiff.

Jeffrey Kenneth Ross, Laura Chase Fisher, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendants.

*MEMORANDUM OPINION
AND ORDER*

ASPEN, Chief Judge:

Plaintiff Marsha Tarver brings this action against her former employer, North American Company for Life and Health Insurance, and against the company's Employees Separation Pay Plan, alleging among other things violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Presently before the court is the defendants' motion to dismiss two counts of the complaint. For the reasons stated

below, we grant the motion to dismiss in part and deny in part.

## I. Background

■ In evaluating this motion to dismiss, we take the complaint's well-pleaded allegations as true and consider exhibits incorporated into the complaint. *Webster v. New Lenox Sch. Dist. 122*, 917 F.2d 1004, 1005 (7th Cir.1990). Tarver began working for North American in 1981, and eventually became a Senior Sales Coordinator by the time her employment was terminated in January 1995.

During much of the time Tarver worked for the defendant, a "Termination Pay" plan was in effect. Dated December 1986, this plan provided that qualified employees would receive a portion of their salary if they were terminated for reasons specified in the plan. Compl., Ex. A (exhibit pages 1–4). The plan, which we will refer to as the "1994 Plan," was in effect during 1994 and did not require terminated employees to sign a waiver of any kind. However, effective January 1, 1995, North American adopted a new "Separation Pay Plan." Compl., Ex. A (exhibit pages 5–10). The 1995 Plan distinguished between "base" separation pay and "supplemental" separation pay. Base separation pay was set at only one week's salary, while supplemental separation pay started at two weeks' salary and increased according to a formula based on the employee's years of service.

Unlike the 1994 Plan, however, the 1995 Plan conditioned the receipt of supplemental separation pay on the terminated employee's execution of a "Waiver and Release Agreement." The waiver provided that, in exchange for supplemental separation pay, the employee "agree[s] to release and never sue the Company with respect to any and all claims of any type to date arising out of any aspect of your employment or the termination of your employment." Compl., Ex. F.

Although imprecisely expressed, the complaint does allege that Tarver was presented with such a waiver on January 5, 1995, when North American notified Tarver that the company planned to eliminate her position, and that her last day would be January 19. Compl. ¶¶ 24, 26. Tarver claims that she was given only thirteen[1] days to decide whether to execute the waiver or else forfeit the severance payment offered to her, *id.* ¶ 62; apparently, she was offered $8627.50, *id.*, Ex. F. Tarver refused.

According to the plaintiff, her supervisor, Kevin Little, eliminated her position and created a new position in order to replace her with a younger male. Compl. ¶¶ 20–23. This was the ultimate goal of a "plan to discriminate" "devised" by Little on January 14, 1994, when Little wrote a memorandum criticizing Tarver's work. Compl. ¶¶ 14, 21, Ex. C. Accordingly, in Counts I and II of her complaint, Tarver alleges that the termination was due to gender and age discrimination.

As for the counts regarding benefits, however, the complaint is not entirely clear. Count III, entitled "Wrongful Denial of Benefits," apparently asserts that the defendants violated the Older Workers Benefit Protection Act (OWBPA), Pub.L. No. 101–433, § 201 (1990), 29 U.S.C. § 626(f), because North American did not provide Tarver with sufficient time to consider the waiver. Compl. ¶¶ 64, 66. Count IV, entitled "ERISA Violations," first alleges that the defendants violated 29 U.S.C. §§ 1002(1), (2)(B)(i), and 29 C.F.R. §§ 2510.3–1(a)(3), 2510.3–2(b)—which are definitional sections—by conditioning "sever[a]nce pay," "profit sharing," or "assignment of her insurance benefits and other benefits" on execution of the waiver. Compl. ¶ 68. In addition, under the blanket assertion that the defendants violated "the provisions of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1451," Compl. ¶ 71, Tarver claims that the defendants breached their fiduciary duties and "acted wrongfully" by denying her benefits under the 1994 Plan, *id.* ¶ 70, and that the defendants decided prior to January 1, 1995 to discharge Tarver but waited until after the new year to announce the decision in order to "effect a forfeiture of

---

**1.** In other paragraphs of the complaint, the plaintiff alleges that she was given 21 days to consider the waiver, Compl. ¶¶ 27, 29, but the plaintiff represents 13 days as the decision period in her response brief. Pl.'s Resp. Br. at 3.

Plaintiff's vested benefits under the 1994 Plan," *id.* ¶ 69.

Presently before the court is the defendants' motion to dismiss Counts III and IV. North American argues that it owed no fiduciary duty to Tarver with regards to severance benefits; that alternatively the plaintiff has failed to exhaust the company's claims procedure; and that, at the least, there is no cause of action under the OWBPA where the employee does not execute a waiver. In response, Tarver first explains that the OWBPA "is not asserted as an independent cause of action," but rather in support of the arbitrary and capricious administration claim under ERISA. In light of this concession, we dismiss Count III and refrain from deciding the issue. Rather, we limit our discussion below to the remaining disputed issues, namely, the ERISA claims in Count IV.

## II. Standard for Reviewing Motion to Dismiss

■ A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *see also Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir.1995); *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take as true the well-pleaded factual allegations of the complaint and view them, as well as reasonable inferences drawn from them, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High Sch. Dist. 230,* 991 F.2d 1316, 1324 (7th Cir.1993) (citing *Ellsworth,* 774 F.2d at 184).

## III. Discussion

■ As an initial matter, we disagree with the defendants that Tarver has failed to allege the futility of presenting her benefits claims to the Plan Administrator. Although "in most situations" we require that ERISA claimants exhaust administrative remedies prior to bringing suit, *Kross v. Western Elec. Co.,* 701 F.2d 1238, 1244 (7th Cir.1983), we will excuse failure to file an administrative claim if it would be futile to do so, *Powell v.*

*AT & T Communications, Inc.,* 938 F.2d 823, 826 (7th Cir.1991). The 1995 Plan anoints North American's Head of Human Resources as the Plan Administrator, who makes "final and conclusive" decisions with respect to all Severance Pay Plan questions. 1995 Plan Summary at 7. In her response brief, Tarver seemingly claims that it was the Plan Administrator who told Tarver that benefits were conditioned on signing the waiver. *See* Pl.'s Resp. Br. at 4 ("The Plan Administrator told Plaintiff ... to either sign the waiver and release, or forfeit severance pay, vacation pay and insurance."); *see also id.* at 5. We will consider these allegations in her brief, *Hrubec v. National R.R. Passenger Corp.,* 981 F.2d 962, 963–64 (7th Cir.1992), and accordingly conclude that dismissal for failure to exhaust is improper at this stage.

■ But several of the ERISA claims packed into Count IV must nonetheless be dismissed for failure to state a claim. Severance benefit plans are "welfare" benefit plans under ERISA, rather than "retirement or pension" benefit plans. *Young v. Standard Oil (Indiana),* 849 F.2d 1039, 1045 (7th Cir.) (comparing 29 U.S.C. § 1002(1) with § 1002(2)), *cert. denied,* 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988). Accordingly, severance benefits are unaccrued and unvested, and "an employer does not owe its employees a fiduciary duty when it amends or abolishes a severance benefit plan." *Id.* To the extent that the plaintiff asserts that North American violated a fiduciary duty by abolishing the 1994 Plan, which did not require a waiver and release, and instituting in its place the 1995 Plan, we dismiss those claims.

■ In addition to the fiduciary duty claims, Tarver also seems to argue that the denial of severance benefits was "arbitrary and capricious," the standard by which we review a benefits determination where the plan grants the administrator discretion over the determination, *see Allison v. Dugan,* 951 F.2d 828, 832 (7th Cir.1992) (construing *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)); *Young,* 849 F.2d at 1045. If by this allegation Tarver means to argue that she should

have been considered for severance benefits under the 1994 Plan, *see* Compl. ¶¶ 70–71, we dismiss that claim because the plan in effect at the time of her termination was the 1995 Plan, and the administrator was required to enforce the plan's terms. *See McGath v. Auto–Body N. Shore, Inc.*, 7 F.3d 665, 670 & n. 5 (7th Cir.1993) (citing 29 U.S.C. § 1104(a)(1)(D)).

 If instead the plaintiff is asserting that she should have received severance benefits under the 1995 Plan, and that North American acted arbitrarily and capriciously by giving her only 13 days to consider the waiver, *see* Pl.'s Resp. Br. at 2–3, we dismiss those claims because Tarver neither executed the waiver nor ever maintained that she was willing to execute the waiver. Accordingly, the terms of the 1995 Plan precluded her from receiving severance benefits,[2] and given her unwillingness to execute a waiver, a procedural failure to provide her with more time did not prejudice her. *See Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir. 1991).

 Finally, to the extent that Tarver alleges a violation of ERISA § 510, 29 U.S.C. § 1140, Pl.'s Resp. Br. at 3–4, we dismiss that claim as well. Section 1140 provides in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

According to the plaintiff, the defendants violated § 1140 by "intentionally wait[ing] to discharge Plaintiff" until after January 1, 1995, "in order to coerce her into waiving discrimination charges with an induce[ment] of benefits to which she was entitled to without a waiver on December 31, 1994." Pl.'s Resp. Br. at 4. Essentially, Tarver argues that the *continuation* of her employment until after the new year constituted discrimination under § 1140.

 However, in light of § 1140's focus on adverse actions affecting the employee's status, the statute

> was designed to protect the *employment relationship* against actions designed to interfere with, or discriminate against, the attainment of a [benefit] right.... This means that a fundamental prerequisite to a [§ 1140] action is an allegation that the employer-employee relationship, and not merely the [benefit] plan, was changed in some discriminatory or wrongful way.

*McGath*, 7 F.3d at 668 (emphasis and alterations added) (quoting *Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990)). Section 1140 thus "does not protect employees against all employer actions undertaken with an eye toward thwarting the attainment of benefits; only changes in one's *employment status* cannot stem from benefit-based motivations." *Teumer v. General Motors Corp.*, 34 F.3d 542, 545 (7th Cir.1994) (emphasis in original).

Consistent with this view of § 1140, dicta in *Sallee v. Rexnord Corp.*, 985 F.2d 927 (7th Cir.1993), suggests that continuation of employment does not involve the sort of change in employment status prohibited by § 1140. In *Sallee*, employees confronted with impending lay-offs found jobs elsewhere and negotiated termination dates with their employer in order to become eligible for severance payments. *Id.* at 928. However, the employer refused to schedule termination dates with two particular employees; these two employees then quit to begin work at their new jobs, and brought suit under § 1140. In holding that the two employees did not even have a colorable claim to the severance payments, the court in *Sallee* observed that "while section 1140 protects plan participants from discharge, suspension, and the like, it does not appear to protect them from continued employment." *Id.* at 929; *accord Eret v. Continental Holding, Inc.*, 838 F.Supp. 358, 364 (N.D.Ill.1993) ("[A] plaintiff does not state a cause of action [under § 1140] where the employer's only alleged discrimination was retaining an employee un-

---

**2.** We note that the plaintiff raises no allegations as to whether she received "base" separation pay, which does not require execution of a waiver.

der circumstances where the employee preferred to be terminated.").

We agree that continuation of employment does not constitute the sort of change in employment status that § 1140 protects. Continued employment, unaccompanied by any other change, does not fall within the catalogue of specific employment relationship changes listed in § 1140 ("discharge, fine, suspend, expel, discipline"); indeed, to continue employment is *not* to "discharge." Nor is delay in termination alone akin to any of those specific changes, and we should read the more general term "discriminate" in light of the more specific terms. *Cf. Newsom v. Friedman,* 76 F.3d 813, 820 (7th Cir.1996) (employing *ejusdem generis* as an interpretive tool). Similarly, continued employment by itself does not constitute "harassing" behavior, which § 1140's legislative history suggests may be encompassed by the statute when unlawfully motivated, *McGath,* 7 F.3d at 669. Absent some resulting disruption to the employment relationship, amendment of the 1995 Plan to require execution of a waiver—even if amended to force the employee to eventually choose between retaining legal actions and receiving severance benefits—does not fall within § 1140. *See McGath,* 7 F.3d at 668–69.

In sum, in addition to dismissing Count III, we dismiss Count IV to the extent it claims that: the defendants breached a fiduciary duty in abolishing the 1994 Plan and instituting the 1995 Plan; the defendants acted arbitrarily and capriciously in denying severance benefits under the 1994 and 1995 Plans; and the defendants violated § 1140 by waiting to terminate Tarver's employment. We point out, however, that at this time we do not dismiss the plaintiff's sketchy claims regarding the defendants' allegedly unlawful denial of her "profit sharing" benefits and unlawful refusal to permit "assignment of her insurance benefits and other benefits." Compl. ¶ 68. The parties have neither briefed these claims nor provided copies of the relevant benefit plans. We may more appropriately resolve these issues at a later time, and thus deny without prejudice the defendants' motion to dismiss these claims.

## IV. Conclusion

For the reasons stated above, the defendants' motion to dismiss Count III is granted; the motion to dismiss Count IV is granted in part and denied in part. It is so ordered.