A. James EDWARDS, et al., Plaintiffs,

v.

AKZO NOBEL, INC., et al., Defendants.

No. 99–CV–6583L.

United States District Court,
W.D. New York.

June 19, 2000.

Raymond M. Schlather, LoPinto, Schlather, Solomon & Salk, Ithaca, NY, for A. James Edwards, plaintiff.

Eugene D. Ulterino, Nixon, Peabody LLP, Rochester, NY, for Akzo Nobel, Inc., defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiffs commenced this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking to recover certain retirement benefits allegedly due them under the Akzo Nobel Retirement Account Plan ("the Plan"). The original complaint contained six causes of action: two under ERISA; three state-law claims for breach of contract, fraud, and conspiracy to defraud; and a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*

Defendants, Akzo Nobel, Inc. ("Akzo"), the Plan, by its representative, Akzo Nobel Retirement Account Plan Pension Committee ("the Committee"),[1] and Cargill, Inc., have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In addition to responding to those motions, plaintiffs also filed an amended complaint. That complaint dropped the fraud, conspiracy, and RICO claims. Plaintiffs state that the amended complaint also "clarif[ies] their ERISA and contract claims...." Plaintiffs' Memorandum of Law at 2. Defendants have filed reply briefs addressing these remaining claims.

## BACKGROUND

The five plaintiffs in this action were all employees of Akzo at its facility in Watkins Glen, New York as of April 1997, and were fully vested members of the Plan. The Plan contained an early-retirement provision giving participants the option of retiring (albeit with reduced benefits) as early as age 55. Plaintiffs were all within two years of reaching age 55 in April 1997.

In December 1996, Akzo entered into a purchase agreement with Cargill, pursuant to which Cargill would acquire most of Akzo's salt-producing business by April 1997, including the Watkins Glen facility. The agreement also provided that Akzo would "retain the assets, sponsorship, administration of and liability for all benefit obligations pursuant to its benefit plans," and that Akzo would "fulfill its obligations in accordance with [its] pension plans without regard to whether or not an eligible retiree is employed by Cargill." Amended Complaint Ex. A. The agreement stated, "It is expressly understood and agreed that Cargill is not assuming any obligations or liabilities under [Akzo's] benefit plans." *Id.*

The purchase agreement further provided that Akzo was to provide Cargill with a list of all its active employees, and that prior to the closing, Cargill would identify those employees whom it was not going to retain. Cargill promised, however, "to employ substantially all" of the remaining employees, and "to maintain substantially the same base salary levels and fringe benefit structure (on an aggregate basis) for Transferred Employees initially." *Id.* The agreement also stated that "[a]s to those employees ... to whom Cargill offers a substantially different job or location and such offer is refused, Cargill will promptly pay to [Akzo] the severance payments which would be made by [Akzo] to such employees in the event of their termination as of the Closing in accordance with [Akzo's] standard severance practice." *Id.*

Akzo transferred the Watkins Glen and other salt-producing facilities to Cargill on April 25, 1997. None of the plaintiffs had been selected by Cargill for termination prior to the transfer. Under the terms of the purchase agreement, plaintiffs at that point ceased being Akzo employees, and became employees of Cargill instead. The complaint alleges that although plaintiffs initially were kept on as Cargill employees, Cargill terminated all of them within six months of the sale.

---

1. Akzo, the Plan, and the Committee will be collectively referred to as "the Akzo defendants."

The amended complaint asserts three causes of action. The first, which is brought under 29 U.S.C. § 1140 against the Akzo defendants, alleges that prior to the execution of the purchase agreement, Akzo and Cargill represented to plaintiffs that they would suffer no substantial reduction in benefits as a result of the sale of the Watkins Glen facility to Cargill. Plaintiffs also allege that Akzo promised them that, as employees within two years of early retirement age, they would be "bridged" to age 55. In other words, Akzo promised plaintiffs that their right to claim full early retirement benefits would not be affected by the sale to Cargill.

Under the terms of the Plan, any employee age 55 or older could claim early retirement benefits. The employee's pension benefit would be reduced by .5% for each month by which the commencement date of the pension preceded the employee's 62nd birthday. Affidavit of A. James Edwards (Docket Item 16) Ex. O, § 4.03(b). The Plan also provides that if a vested Plan member's employment were terminated for any reason other than retirement or death, the member would be eligible for a pension upon reaching his normal retirement date (in most cases, age 65). *Id.* § 4.05(b)(i). The Plan states that

> (ii) Notwithstanding the foregoing, a Member's employment shall not be deemed terminated ... if (A) the Member's business unit, group or division is sold; and (B) the Member accepts employment with the purchaser or an affiliate of purchaser; and (C) assets from the Trust Fund attributable to the Member are transferred to a qualified retirement plan maintained by purchaser or an affiliate of purchaser.

*Id.* § 4.05(b)(ii).

Section 4.05(c) provides that a terminated Plan member may also

> elect ... to have his Pension begin as of the first day of any month following his 55th birthday and prior to his Normal Retirement Date. In such event, the Member's Pension shall be reduced by

one-half of one percent (0.5%) for each full month by which the Benefit Commencement Date precedes the Member's Normal Retirement Date.

*Id.*

The complaint alleges that the Akzo defendants have treated plaintiffs as having been terminated by Akzo as of April 25, 1997, and has reduced their benefits with reference to the dates of their 65th birthdays under § 4.05(c), rather than with reference to the dates of their 62nd birthdays under § 4.03(b). As a result, plaintiffs allege that they have lost 18% of the value of their pension benefits. Plaintiffs allege that similarly-situated employees at other Akzo facilities were allowed to "bridge" to their early retirement dates, so that their benefits were not reduced in this fashion.

Based upon these allegations, plaintiffs assert that the Akzo defendants' treatment of plaintiffs constitutes a discharge of, or discrimination against, pension plan participants for the purpose of interfering with plaintiffs' right under the Plan, in violation of 29 U.S.C. § 1140. Plaintiffs seek enforcement of their alleged right to a full early retirement benefit, or damages in the amount of $1,185,000.

In the second cause of action, also asserted against the Akzo defendants, plaintiffs allege that defendants' failure to provide them with a full early retirement benefit violated the terms of the Plan, in violation of defendants' fiduciary duty under 29 U.S.C. § 1104 to act solely in the interest of Plan participants. Plaintiffs state that under §§ 1132(a)(1)(B) and 1132(a)(3), they are seeking enforcement of their rights under the Plan, recovery of benefits due to them, clarification of their rights to future benefits, and any damages allowed by law.

The third cause of action is asserted against Akzo and Cargill for breach of contract under New York law. Plaintiffs allege that they are third-party beneficiaries of the purchase agreement between Akzo and Cargill. Plaintiffs allege that

defendants breached their obligations to plaintiffs under the contract by reducing plaintiffs' employment benefits after the sale. In particular, plaintiffs allege that: Cargill failed to provide retiree life insurance at no cost, and retiree health insurance at a reduced cost, as Akzo had done with other retirees in the past; Cargill failed to provide a severance package substantially equivalent to Akzo's; and Akzo and Cargill failed to provide plaintiffs with early retirement pension benefits with a value comparable to what would have been provided had the sale of Akzo's facilities not occurred. Plaintiffs seek damages on this claim in the amount of $1,500,000. The complaint also requests punitive damages and attorney's fees.

## DISCUSSION

### I. Claim Under 29 U.S.C. § 1140

In plaintiffs' first cause of action, they allege that the Akzo defendants' actions constitute "discharge of or discrimination against" plaintiffs in order to interfere with their right to pension benefits, in violation of § 510 of ERISA, 29 U.S.C. § 1140. Amended Complaint ¶ 36. That statute provides in part: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit] plan...."

From a careful review of plaintiffs' papers, however, it appears that they are not actually alleging that Akzo actually *discharged* them in order to interfere with their rights under the Plan. Rather, they assert only that Akzo *discriminated* against them in violation of § 510. They assert that it was not the fact that they became employees of Cargill, rather than Akzo, in April 1997 that violated § 510, but Akzo's classification of them as "terminated" employees for purposes of calculating their benefits. This is not a case, for example, where a plaintiff alleges that his employer terminated him in order to prevent his pension rights from vesting. Rather, this is a dispute about the manner in which defendants calculated the amounts of plaintiffs' benefits.

Indeed, given the facts here, it could hardly be otherwise. There is no dispute that, although plaintiffs ceased being Akzo employees in April 1997, their actual termination from employment in general, in the sense that plaintiffs ceased being employed by *anyone*, was effected by Cargill, not Akzo. In addition, the purchase agreement makes clear that the transferred employees would cease being Akzo employees, and become Cargill employees, immediately upon transfer of Akzo's facilities, and plaintiffs expressly disavow any claim that Akzo's sale of those facilities to Cargill was motivated by any discriminatory intent. *See* Plaintiffs' Memorandum of Law at 9 ("Of course, plaintiffs do not contend that an intent to deprive them of their pension benefits was the motivating factor behind this sale; such a claim would be ludicrous"). The dispute here is whether, under the terms of the Plan, Akzo should have maintained the legal fiction that plaintiffs had not been terminated pursuant to § 4.05(b)(ii) of the Plan. Accordingly, the issue is whether Akzo's decision that § 4.05(b)(ii) did not apply to plaintiffs constituted "discrimination" for purposes of § 510.

■ In *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir.1988), the Second Circuit adopted the burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for analyzing discrimination cases under § 510. Pursuant to this analysis, the plaintiff must first establish a *prima facie* case of discrimination by demonstrating: (1) that he was a member of a protected class; (2) that he was qualified for the job he was performing; (3) that he was discharged or subjected to an adverse employment action; and (4) that the discharge or adverse action occurred under

circumstances giving rise to an inference of discrimination. *Dister,* 859 F.2d at 1112.

If the plaintiff meets that burden, which is *de minimis, see Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994), the defendant is required to articulate—but not to prove—a legitimate, nondiscriminatory reason for its actions. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the defendant has done so, the plaintiff's burden is then to prove that the reason advanced by the defendant is a mere pretext for discrimination. *Id.* at 256, 101 S.Ct. 1089. At all times, the plaintiff bears the ultimate burden of demonstrating that the real motivation underlying the defendant's actions was unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 517–18, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Applying this standard to the case at bar, I find that plaintiffs' claim under § 510 must be dismissed. This is in essence a claim for benefits that is properly brought under 29 U.S.C. § 1132(a)(1)(B), not a discrimination claim under § 510.

The Second Circuit "has explained that '[s]ection 510 was designed primarily to prevent unscrupulous employers from discharging or harassing employees in order to keep them from obtaining vested pension rights.'" *Sandberg v. KPMG Peat Marwick, L.L.P.,* 111 F.3d 331, 334 (2d Cir.1997) (quoting *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1111 (2d Cir. 1988)). There are no facts alleged here tending to show any such actions by the Akzo defendants.

Moreover, § 510 only "reaches conduct which directly affects the employer-employee relationship in a fundamental way … so as to interfere with … pension rights", *Swanson v. U.A. Local 13 Pension Plan,* 779 F.Supp. 690, 702 (W.D.N.Y.), *aff'd,* 953 F.2d 636 (2d Cir.1991). Defendants' allegedly improper or incorrect calculation of plaintiffs' benefit amounts could not possibly have affected the employer-employee relationship here, because none existed at the time that defendants made that calculation. Nothing changed here when Akzo determined that plaintiffs should be treated as terminated employees under the Plan; the only impact of that determination was on the amount of plaintiffs' benefits.

Plaintiffs do allege that similarly-situated transferred employees at sites other than Watkins Glen were treated more favorably than plaintiffs in this regard. Amended Complaint ¶ 36. The fact remains, however, that (1) defendants' alleged actions did not affect plaintiffs' employment relationship, and (2) plaintiffs' claim is simply that defendants did not correctly apply the Plan provisions to them, regardless of how they may have treated other employees.

The central flaw in this claim that other employees in the same circumstances as plaintiffs [2] received a higher level of benefits is that, assuming that allegation to be true, one of two situations must exist: either both plaintiffs and those other employees are entitled to full early retirement benefits under the terms of the Plan, or neither of them are. If both groups are entitled to such benefits, however, then plaintiffs' proper avenue of relief is a claim for benefits under § 1132(a)(1)(B), which

---

**2.** Of course, if the other employees's circumstances were *not* the same as plaintiffs' in some material way, their receipt of benefits would not be probative of discrimination. *Cf. Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 568 (2d Cir.2000) (plaintiff in Title VII action failed to create fact issue about whether defendant's proffered reason for her termination—violating defendant's policy prohibiting physical assault—was pretextual, because

she did not establish that she was similarly situated to employees whose violations of that policy defendant allegedly overlooked); *Hines v. Hillside Children's Ctr.,* 73 F.Supp.2d 308, 318–19 (W.D.N.Y.1999) (for evidence relating to employer's treatment of other employees to be relevant in plaintiff's employment discrimination action, those employees must have been situated similarly to plaintiff).

they have in fact asserted in this action. If neither group is entitled to full benefits, however, that does not give rise to a claim under § 510, for that statute cannot be used to require employers to provide benefits that are not provided for by the terms of a benefit plan.

The Court of Appeals for the Seventh Circuit addressed a similar situation in *McGath v. Auto–Body North Shore, Inc.*, 7 F.3d 665, 668 (7th Cir.1993). There, the plaintiff alleged that the trustees of his employer's pension plan had discriminated against him in violation of § 510 because they had strictly enforced eligibility rules to keep him out of the plan, but allowed in other employees who did not qualify. The Seventh Circuit held that such conduct did not amount to unlawful discrimination, stating that "[b]ecause the plan must be administered according to its terms, [plaintiff] cannot complain because he is held to those terms; this is true even if the rules were bent for another individual." *Id.* at 670. The court observed that "ERISA § 510 affords protection from discrimination that interferes 'with the attainment of any right to which such participant may become entitled under the plan.' Mr. McGath does not have a *right* to treatment that is contrary to the terms of the plan, even if those terms are breached for others." *Id.*

Other circuit and district courts have reached similar conclusions. In *Jefferson v. Vickers, Inc.*, 102 F.3d 960 (8th Cir. 1996), the plaintiff alleged that his employer had demanded that he execute a release before the employer would give him an extension of severance benefits until after his benefit plan's vesting date, in order to enable him to become fully vested in the plan. The plaintiff alleged that other employees received extensions without executing releases. Citing *McGath*, the Eighth Circuit stated that "even if proven, the incidents would not impose section 510 liability.... An employer does not violate ERISA by offering a gratuity to one employee that is less generous than a gratui-

ty bestowed on another. Such an offer itself does not establish intentional interference with ERISA rights." *Id.* at 964–65. *See also Varhola v. Cyclops Corp.*, 820 F.2d 809, 816 (6th Cir.1987) (rejecting plaintiffs' claim of discrimination in violation of 29 U.S.C. § 1140 based on allegation that defendant allowed similarly-situated employees to retire with "shutdown" pensions when coke plant was sold, but required plaintiffs to continue working there under new employer; "While that may not be fair we do not believe that it constitutes a discriminatory action under section 1140"); *Pierson v. Hallmark Marketing Corp.*, 990 F.Supp. 380, 389 (E.D.Pa.1997) (defendants' denial of pension benefits to plaintiff, but gratuitous payment of benefits to other employees who retired near the time of plaintiff's retirement did not create cause of action for plaintiff under ERISA § 510, since plaintiff could not prove that he ever satisfied plan's requirements for participation); *White v. E & F Distrib. Co. Employee's Pension Plan*, 922 F.Supp. 132, 141 (C.D.Ill.1996) (even if plan trustees violated their fiduciary duties to qualified plan participants by admitting some unqualified employees, plaintiff was not qualified under terms of the plan and therefore could not state ERISA claim based on his exclusion from the plan).

It is clear, therefore, that regardless of whether other ex-Akzo employees in plaintiffs' situation were allowed to "bridge" to age 55 or otherwise received full early retirement benefits, plaintiffs cannot state a claim under ERISA § 510. If plaintiffs are entitled to receive such benefits, they may seek them under § 1132(a)(1)(B); if they are not entitled to them, they have no claim at all.

## II. Claims Under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3)

Plaintiffs' second cause of action asserts claims against the Akzo defendants under two sections of ERISA: § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which permits a

civil action to be brought by a claimant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"; and § 502(a)(3), 29 U.S.C. § 1132(a)(3), which provides a right of action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

■ Defendants do not seek dismissal of the § 502(a)(1)(B) claim against the Plan at this time, but they contend that it is not properly asserted against Akzo or the Committee. With respect to that issue, the Second Circuit has stated that "[i]n a recovery of benefits claim [under 29 U.S.C. § 1132(a)(1)(B) ], only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir.1998) (quoting *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir.1989)); *accord Walsh v. Eastman Kodak Co.*, 53 F.Supp.2d 569, 574 (W.D.N.Y. 1999); *MacMillan v. Provident Mut. Life Ins. Co. of Philadelphia*, 32 F.Supp.2d 600, 604 (W.D.N.Y.1999); *Dittman v. Dyno Nobel, Inc.*, No. 97–CV–1724, 1998 WL 865603 *6 (N.D.N.Y. Nov.24, 1998); *Brannon v. Tarlov*, 986 F.Supp. 146, 152 (E.D.N.Y.1997), *aff'd*, 164 F.3d 617 (2d Cir. 1998), *cert. denied*, ⎯ U.S. ⎯, 120 S.Ct. 99, 145 L.Ed.2d 84 (1999); *Greater Blouse, Skirt, & Undergarment Ass'n, Inc. v. Morris*, No. 93–1257, 1996 WL 325595 *4 (S.D.N.Y. June 12, 1996).

This claim must therefore be dismissed against Akzo. The Committee, however, is alleged to be the administrator of the Plan. As such, it is a proper defendant on this claim.

■ Defendants contend that plaintiffs' claim under § 502(a)(3) is improper, as plaintiffs seek only the recovery of benefits, and have an adequate remedy under § 502(a)(1)(B). I agree.

In *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the Supreme Court, in determining whether relief under § 502(a)(3) was available to the plaintiffs in that case, analyzed § 1132 as a whole. The Court stated that "[f]our of that section's six subsections focus upon specific areas," while "[t]he language of the other two subsections," one of which is § 502(a)(3), "creates two 'catchalls,' providing 'appropriate equitable relief' for 'any' statutory violation." *Id.* at 512, 116 S.Ct. 1065. The Court reasoned that "these catchall provisions operate as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Id.* Noting that the statute authorizes "appropriate" equitable relief, the Court stated that it expected that "courts, in fashioning 'appropriate' equitable relief, will keep in mind the 'special nature and purpose of employee benefit plans,' and will respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others." *Id.* at 515, 116 S.Ct. 1065. Therefore, the Court stated, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.*

Based upon *Varity*, this court has previously held that where a plaintiff sought benefits allegedly due to him under a retirement plan, "[s]ection 1132(a)(1)(B) provide[d] him with an appropriate remedy, and he therefore c[ould] not proceed under § 1132(a)(3) as well." *Layaou*, 69 F.Supp.2d 419 (W.D.N.Y.1999). *See also Fitch v. Chase Manhattan Bank, N.A.*, 64 F.Supp.2d 212, 228–29 (W.D.N.Y. 1999) (interpreting *Varity* "to mean that plaintiffs may not seek the same relief under 29 U.S.C. § 1132(a)(3) as they are seeking under 29 U.S.C. § 1132(a)(1)(B)") (citing *Joyce v. Curtiss–Wright Corp.*, 992

F.Supp. 259, 270–71 (W.D.N.Y.1997), *aff'd*, 171 F.3d 130 (2d Cir.1999)); *Dittman v. Dyno Nobel, Inc.*, No. 97–CV–1724, 1998 WL 865603 *8 (N.D.N.Y. Nov.24, 1998) (since plaintiff was seeking benefits under the terms of a plan, Congress had "provided adequate relief" for plaintiff pursuant to § 1132(a)(1)(B), and further equitable relief enjoining defendants from violating the terms of the plan was not appropriate).

In the case at bar, plaintiffs have not even offered any reasons why they should be allowed to proceed on their claim under § 502(a)(3). Their brief in response to this part of defendants' motion simply argues why plaintiffs believe they are entitled to benefits. It is clear that the relief sought here is simply the recovery of benefits allegedly due to plaintiffs under the Plan. Therefore, their claim under 29 U.S.C. § 1132(a)(3) must be dismissed.

### III. Breach of Contract

Plaintiffs' third cause of action asserts a claim against Akzo and Cargill for breach of contract under New York law. Plaintiffs allege that they are third-party beneficiaries of the purchase agreement, and that defendants breached their contractual obligations to plaintiffs because of Cargill's failure to provide plaintiffs with free retiree life insurance, reduced-cost retiree health insurance, and a severance package substantially equivalent to Akzo's, and because of Akzo's and Cargill's failure to provide plaintiffs with early retirement pension benefits of comparable value comparable to what plaintiffs would have received had they still been employed by Akzo. Defendants contend that this claim is preempted by ERISA.

With certain exceptions not applicable here, ERISA provides that its provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. State law claims relating to employee benefit plans are therefore preempted by ERISA. *Pilot Life Ins. Co.*

*v. Dedeaux*, 481 U.S. 41, 44, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The Supreme Court has described ERISA's preemption provisions as "expansive." *Id.* at 45–46, 107 S.Ct. 1549. *See also Romney v. Lin*, 94 F.3d 74, 78 (2d Cir.1996), *cert. denied*, 522 U.S. 906, 118 S.Ct. 263, 139 L.Ed.2d 189 (1997); *Smith v. Rochester Tel Bus. Mktg. Corp.*, 786 F.Supp. 293, 305 (W.D.N.Y. 1992) ("Congress intended ERISA 'to occupy fully the field of employee benefit plans and to establish it "as exclusively a federal concern" ' ") (quoting *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir.1988)), *aff'd*, 40 F.3d 1236 (2d Cir.1994).

The Supreme Court has stated that a "law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). *Shaw* set forth a two-part analysis for determining whether a breach of contract claim is preempted by ERISA: "(a) whether the contract claim asserted is related to an employee benefit plan, and, if so, (b) whether there is an exception under ERISA that precludes pre-emption of the state law." *Devlin v. Transportation Communications Int'l Union*, 173 F.3d 94, 101 (2d Cir.1999). If no exception applies, the claim is preempted, for a "state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir.1992).

In the case at bar, plaintiffs' breach of contract claim plainly relates to an employee benefit plan, and is therefore preempted by ERISA. First, ERISA itself states that the types of benefits sought here are covered by employee welfare benefits plans. *See* 29 U.S.C. § 1002(1) (stating that "[t]he terms 'employee welfare benefit plan' and 'welfare plan' mean any plan ... established or ... maintained for the purpose of providing [*inter alia*,] ... (A) medical, surgical, or hospital care or

benefits, or benefits in the event of sickness, accident, disability, death or unemployment ...), and § 1002(2)(B) (stating that "the terms 'employee pension benefit plan' and 'pension plan' mean any plan ... established or maintained" for the purpose of "provid[ing] retirement income to employees ..."). These are precisely the types of benefits to which plaintiffs claim they are contractually entitled.

Plaintiffs argue that their contract claim does not relate to an employee benefit plan because the relief sought here would not have to come from the Plan itself. Apparently plaintiffs' suggestion is that defendants could simply pay plaintiffs damages out of their own corporate assets, without involving the Plan. That argument is unpersuasive. All that plaintiffs are doing is asserting an "alternative theory for recovery" for benefits that they claim are due them under the Plan. *Diduck,* 974 F.2d at 288; *see Smith v. Dunham-Bush, Inc.,* 959 F.2d 6, 12 (2d Cir.1992) (rejecting plaintiff's argument that he "was merely suing for additional benefits from the employer, rather than the plan," and adding that though plaintiff had "present[ed] that claim attractively, if not sympathetically, ... [t]o accommodate such a claim ... would irreparably undermine ERISA and would seriously discourage employers from adopting such plans"); *Cerasoli v. Xomed, Inc.,* 952 F.Supp. 152, 158 (W.D.N.Y.1997) (rejecting plaintiff's contention that his claim was not preempted because he was suing his employer directly for damages, rather than suing the plan administrator for payment of benefits; collecting cases).

In addition to their claim that the purchase agreement called for them to receive various Plan benefits that were later denied them, plaintiffs allege that the value of Cargill's "severance package" was not comparable to Akzo's, also allegedly in violation of the terms of the purchase agreement. It is conceivable that this alleged

deficiency was attributable at least in part to a lack or lower level of some sorts of benefits or payments not covered by ERISA. Plaintiffs have identified no such items, however. The only things specifically identified by them as not having been provided to them are the pension and other benefits mentioned above, which are clearly part of an employee benefit plan governed by ERISA.[3]

Finally, I note that although ERISA does set forth certain exceptions from its coverage, *see* 29 U.S.C. §§ 1144(b), (d), none of them applies here. *Shaw,* 463 U.S. at 96, 103 S.Ct. 2890. Accordingly, plaintiffs' claim for breach of contract must be dismissed as preempted by ERISA. *Devlin,* 173 F.3d at 101.

## CONCLUSION

Defendant Cargill, Inc.'s motion to dismiss the complaint (Docket Item 7) is granted, and the complaint is dismissed as to Cargill, Inc.

The motion to dismiss (Docket Item 8) filed by defendants Akzo Nobel, Inc. and Akzo Nobel Retirement Account Plan, by its representative, Akzo Nobel Retirement Account Plan Pension Committee ("the Akzo defendants") is granted in part and denied in part. The first and third causes of action are dismissed in their entirety. The second cause of action is dismissed as to Akzo Nobel, Inc., and as to the Akzo defendants except insofar as it asserts a claim under 29 U.S.C. § 1132(a)(1)(B) against the Akzo Nobel Retirement Account Plan and the Akzo Nobel Retirement Account Plan Pension Committee. In all other respects, the motion is denied.

IT IS SO ORDERED.

---

**3.** While I realize that there has been no discovery in this case yet, plaintiffs make no claim, nor is there any reason to think, that

they need discovery in order to learn in what respect their severance benefits were inadequate.