Sylvia **EHRLICH**, Plaintiff,

v.

**NYNEX CORPORATION,**
**et al., Defendants.**

No. 96 Civ. 4373 (LAK).

United States District Court,
S.D. New York.

Dec. 27, 1996.

214

John P. Rudden, New York City, for Plaintiff.

Lisa M. Birkdale, for Defendants.

**1.** Defendants are NYNEX Corporation, New York Telephone Co., and the NYNEX Management Pension Plan. They are referred to collectively as NYNEX, as there is no need to distinguish among them in this opinion.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The plaintiff in this case, the former wife of a retired NYNEX employee, was awarded, in substance, a 50 percent interest in her former spouse's NYNEX pension benefits by the New York court that issued the divorce decree dissolving the marriage. She now claims that she is entitled to obtain that interest in a lump sum rather than in the form of monthly payments commencing when her former spouse reaches age 65. The parties cross-move for summary judgment.[1]

### Facts

Plaintiff's former husband, Ron S. Ehrlich, was a salaried NYNEX employee in late 1991, when NYNEX created the NYNEX Force Management Plan ("FMP"). The FMP was an administrative process employed by NYNEX to get rid of unnecessary employees—in the current parlance, to "downsize" its work force. It was not an employee benefit plan.

Mr. Ehrlich was covered by NYNEX's Management Pension Plan (the "Plan"), which is organized and maintained pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). The Plan provides for the payment of pension benefits, generally in the form of a monthly annuity based upon the participant's age and length of service at the time of separation from NYNEX. The Plan, however, was amended, effective January 1, 1992, to permit certain individuals who separated from NYNEX under the FMP to elect to receive their accrued benefits in the form of a single lump sum distribution. (Donovan Aff. ¶ 3 & Ex. 1: Pl. 3(g) ¶ 3) A "Force Management Plan Update" dated January 29, 1992 advised management employees that those leaving the company under the FMP during 1992 could elect the lump sum option by returning a Lump Sum Distribution Election Form to the Benefit Office within 90 days from its receipt. (Littlefield Aff. ¶ 5 & Ex. 3; Pl. 3(g) ¶ 6)

On February 15, 1992, Sylvia Ehrlich commenced an action for divorce against Ron Ehrlich in New York Supreme Court, New York County. (Cpt ¶ 3) On February 20 and 21, 1992, plaintiff obtained temporary restraining orders against Mr. Ehrlich. The February 20 order enjoined him "from assigning, hypothecating, transferring, relocating, secreting or otherwise disposing of his interest in" the Plan. (S. Ehrlich Aff.Ex. B–3, at 2) The February 21 order enjoined NYNEX "from permitting the payment, distribution, assignment, encumbrance, release or other disposition of [Mr. Ehrlich's] interest in" the Plan.[2] (*Id.* Ex. B–5, at 3)

Mr. Ehrlich left NYNEX pursuant to the FMP on February 28, 1992. He did not elect the single lump sum distribution option. (Pl. 3(g) ¶¶ 4–5) Thus, under the terms of the Plan, his benefit will be paid in a monthly annuity beginning at age 65.

The state court subsequently issued a preliminary injunction on April 21, 1992. Insofar as is relevant here, the order provided:

"The court herewith directs that in the event defendant requests distribution, withdrawal or liquidation of the matter (paragraph B(a) through (e) set forth in the court's order of March 11, 1992, from ... NYNEX, that said paying entity withhold one half of the sum requested by defendant for withdrawal, liquidation, or distribution and place said sum into an interest bearing escrow account to be held by plaintiff's counsel ... pending further court order." (*Id.* Ex. B–9, at 2)

The cross reference to paragraph B(a) of the March 11 order demonstrates that this language applied to Mr. Ehrlich's interest in the Plan. (*Id.* Ex. B–7)

On June 3, 1993, the Ehrlichs entered into a Separation and Settlement Agreement which recited, *inter alia,* that Mr. Ehrlich was entitled to "certain pension/retirement monies" by virtue of his former employment by NYNEX and stated that "[t]he parties agree that a QDRO [qualified domestic relations order[3]] shall issue transferring, without tax consequences, fifty (50%) percent of the aforementioned monies to wife." (*Id.* Ex. B–1, Art. X, ¶ 3) On June 9, 1993, the state court issued a qualified domestic relations order acknowledging Mr. Ehrlich's assignment to Mrs. Ehrlich of "fifty (50%) percent of his interest in the pension benefits ... to be received from ... NYNEX" and directing that the Plan "pay over to the Alternate Payee [Mrs. Ehrlich] the monies called for in th[e] Order ..." (S. Ehrlich Aff.Ex. B–13, at 4) The order went on to provide, however:

"that, in accordance with the aforementioned [Separation] Agreement, this Order is not intended to nor does it require any plan to provide any type or form of benefit, or any option, not otherwise provided under the plan. ..." (*Id.,* at 7)

While the circumstances of its issuance are not clear, the record contains also a further order of the state court, filed March 7, 1995, in which the court ordered that the plan pay to Mrs. Ehrlich "fifty (50%) percent of [Mr. Ehrlich's] monthly benefits in the Plan commencing receipt of benefits by" Mr. Ehrlich and reiterated that the order did not require the Plan "to provide any type or form of benefit, or any option, not otherwise provided under the Plan. ..." (*Id.* Ex. B–17, at 2–3)

On March 4, 1996, Mrs. Ehrlich inquired of NYNEX as to the present dollar amount of Mr. Ehrlich's pension benefits paid as a lump sum. (*Id.* Ex. C–1, at 2) On March 22, 1996, NYNEX responded that a lump sum is not an optional form of payment under the Plan.[4]

---

**2.** These two orders in substance were extended by a further order of the state court on March 11, 1992. (*Id.* Ex. B–7)

**3.** ERISA generally prohibits assignment or alienation of a participant's benefits in a pension plan. ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1). Domestic relations orders which satisfy certain statutory requirements, known as qualified domestic relations orders, are an exception to this rule. ERISA § 206(d)(3)(A)–(L), 29 U.S.C. § 1056(d)(3)(A)–(L); James F. Jorden,

Waldemar J. Pflepsen, Jr. & Stephen H. Goldberg, Handbook on ERISA Litigation § 4.05[D][5] (1994).

**4.** The only copy of the March 22, 1996 letter contained in the record appears in defendant's papers behind a tab numbered "10." Unfortunately, defendants' papers are poorly organized in that the numbered exhibit tabs do not always coincide with the exhibit numbers assigned in defendants' affidavits to the documents to which the affidavits refer. Moreover, as far as the

Plaintiff commenced this action in New York Supreme Court for a declaration that the February 20 and 21, 1992 temporary restraining orders enjoined defendant and NYNEX from filing and/or processing Mr. Ehrlich's request for a lump sum payment of his interest in the Plan and an order directing that NYNEX (a) make a lump sum payment of Mrs. Ehrlich's interest in the Plan, (b) accept and process a request for a lump sum payment of Mr. Ehrlich's remaining interest in the Plan, and (c) pay Mr. Ehrlich's interest to the plaintiff in satisfaction of outstanding judgments she allegedly holds against Mr. Ehrlich. NYNEX removed the action to this Court, contending that the action in substance seeks benefits under an ERISA plan. The Court denied plaintiff's motion to remand.

### Discussion

Mrs. Ehrlich's plight is a sympathetic one. From the papers submitted to this Court, her husband of twenty four years announced that he wanted a divorce, took early retirement from NYNEX, moved first to upstate New York and later to Maryland, and failed to comply with his financial obligations under the separation agreement and divorce decree. Her desire to obtain her own interest in the Plan in a lump sum and to reach her former husband's interest in satisfaction of his apparently defaulted obligations is quite understandable. NYNEX, however, contends that she has failed to exhaust her remedies within the Plan and, in any case, that the Plan correctly rejected her claim.

*Exhaustion of Administrative Remedies*

■ The Plan states that "[a]ny Participant whose claim for benefits has been denied, in whole or in part, may (and must for the purpose of seeking any further review of a decision or for the purpose of determining

any entitlement to a benefit under the Plan), within 60 days after receipt of notice of denial submit a written request for review of the decision denying the claim." Such claims must be submitted to the Employees' Benefit Committee ("EBC"), which serves as the final review committee under the plan and ERISA for the review of all appeal claims ... (Def. 3(g) Ex. 11, § 14.5) Thus, if the Plan rejects a claim for benefits, the claimant ordinarily is precluded from seeking judicial review unless he or she has filed an appeal with the EBC. *See Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 593 (2d Cir.1993); *Barnett v. IBM Corp.,* 885 F.Supp. 581, 586 (S.D.N.Y.1995).

NYNEX argues that plaintiff has failed to exhaust her administrative remedies because she did not appeal to the EBC (a) after being informed on May 18, 1995 of a February 24, 1995 state court order that indicated that she would be paid 50 percent of Mr. Ehrlich's monthly pension benefit as of the date of retirement, or (b) from NYNEX's March 22, 1996 letter in response to her inquiry as to the present value of the pension benefits as a lump sum payment. (Def.Mem. 6)

Assuming, as the parties do, that Mrs. Ehrlich has applied for a lump sum distribution and that her application has been denied,[5] the Court does not view her failure to appeal as precluding judicial review in the peculiar circumstances of this case.

■ The purposes of the exhaustion requirement, as articulated by the Second Circuit in *Kennedy,* are "to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious

Court has been able to determine, there is no reference to Exhibit 10 in any of defendants' affidavits, the sole reference being in Paragraph 14 of its Rule 3(g) statement. Nothing turns on defendant's failure properly to authenticate this document.

5. It is not clear that the parties' assumption is correct. As far as the record discloses, the May 18, 1995 letter was not a response to any initiative by Mrs. Ehrlich. Rather, it was generated

by NYNEX pursuant to its own procedures for determining whether the state court's February 24, 1995 order was a qualified domestic relations order within the meaning of ERISA. (Donovan Aff. ¶ 5) The March 22, 1996 letter was simply a response to Mrs. Ehrlich's inquiry as to the lump sum value of the Plan interest. In neither case did she request that NYNEX make a lump sum payment to her.

standard, not de novo." 989 F.2d at 594 (quoting *Denton v. First Nat'l Bank of Waco, Texas,* 765 F.2d 1295 (5th Cir.), *reh'g denied,* 772 F.2d 904 (5th Cir.1985)).[6] Nevertheless, a plaintiff who fails to exhaust nevertheless will not be deprived of a district court remedy if she makes "a clear and positive showing of the futility of such an appeal...." *Id.* at 592. Among other circumstances in which the exhaustion requirement will not be applied is "where there is a material issue of fact as to whether the plaintiff was informed of the appeals process." *Ludwig v. NYNEX Service Co.,* 838 F.Supp. 769, 781 (S.D.N.Y. 1993) (citing cases); *see also Barnett,* 885 F.Supp. at 587–88 & nn. 7–8 (court may take equitable considerations into account); *Tiger v. AT & T Technologies Plan for Employees' Pensions, Disability Benefits,* 633 F.Supp. 532, 534 (E.D.N.Y.1986) (McLaughlin, J.) (same).

Although Mrs. Ehrlich was made an "alternate payee" by the state court orders, there is nothing in the papers to suggest that she ever received notice of the appellate provisions of the Plan. Nor did NYNEX's May 18, 1995 and March 24, 1996 letters even hint at the availability of an appeals process, much less the dire consequences that might flow from Mrs. Ehrlich's failure to pursue it. As NYNEX is not entitled to summary judgment dismissing Mrs. Ehrlich's claim on the basis of her alleged failure to exhaust unless it has demonstrated that there is no genuine issue as to any material fact, the possibility that Mrs. Ehrlich was justifiably ignorant of the availability of appellate rights within the Plan precludes the granting of its motion on this ground.[7]

*The Merits*

While NYNEX may not obtain summary judgment dismissing the complaint for Mrs. Ehrlich's alleged failure to exhaust, it never-

theless would be entitled to prevail if its decision, measured by the appropriate standard of review, was appropriate. The Court therefore turns to the merits.

*Scope of Review*

■ In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956–57. Where such discretion is conferred, the plan's action is to be sustained unless it is arbitrary and capricious. *See id.* at 111, 109 S.Ct. at 954–55. The existence of a conflict of interest is pertinent in applying the arbitrary and capricious standard. *Id.* at 115, 109 S.Ct. at 956–57.

Here, Section 14.5(a) of the Plan confers authority to grant or deny claims upon the applicable Plan committee. Sections 14.5(c) and (d) make the EBC "the final review committee ... for the review of all appeal claims." Sections 14.5(e) and 14.6, respectively, provide, perhaps somewhat inconsistently, that participants whose claims have been denied retain their right to review under Section 503 of ERISA and that the EBC "shall determine conclusively for all parties all questions arising in the administration of the Plan and any decision of such Committee shall not be subject to further review."

■ Substantially identical provisions of an earlier NYNEX pension plan were at issue in *Ludwig,* where the court held that they constituted a "clear grant of fiduciary authority to determine eligibility for benefits and to interpret the provisions of the Plan...." 838 F.Supp. at 784. The arbi-

---

6. The third of these rationales has only limited application in light of *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989), where the Supreme Court held that a denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard unless the ... plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." In cases in which review is

*de novo,* the exhaustion requirement cannot serve the purpose of ensuring that a more deferential standard is applied.

7. Mrs. Ehrlich's failure to establish that she was justifiably ignorant of her appellate remedies within the Plan also precludes summary judgment in her favor, irrespective of the merits, as she too has failed to sustain her burden.

trary and capricious standard therefore applies here. Nevertheless, it now is clear that a decision made by a fiduciary vested with discretion is arbitrary and capricious if it rests on an error of law. *Miller v. United Welfare Fund,* 72 F.3d 1066, 1070 (2d Cir. 1995) (error of law renders fiduciary's decision arbitrary and capricious) (citing *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995)); *Weil v. Retirement Plan Admin. Committee of the Terson Co.,* 913 F.2d 1045, 1049 (2d Cir.1990) (applying *de novo* standard to administrator's determination of question of law notwithstanding grant of discretion within plan document).

### The State Court Orders

■ Mrs. Ehrlich's first and principal argument is that the February 20 and 21, 1992 state court orders restrained Mr. Ehrlich from exercising his option to elect a lump sum payment of his pension benefits and that this somehow permits Mrs. Ehrlich now to exercise that option. (Pl.Mem. 4) This contention is frivolous irrespective of the standard of review.

The state court restraining orders did no more than prevent Mr. Ehrlich from obtaining and NYNEX from distributing to him any benefits under the Plan. They certainly did not prevent Mr. Ehrlich from electing the lump sum option. Had he done so, NYNEX simply would have been required by the orders to hold the amount otherwise due to him pending a state court decision as to the identit(ies) of the appropriate payee(s). Indeed, the April 21, 1992 preliminary injunction drew back even from this limited restraint. It merely required NYNEX, "in the event defendant requests distribution," to "withhold one half of the sum requested ... and place said sum into an ... escrow account ... pending further court order." (S. Ehrlich Aff.Ex. B–9, at 2)

### The Language of the Plan

Plaintiff's other contention, first raised in her reply papers, is that the Plan authorizes or, at any rate, does not prevent her from exercising the lump sum distribution option

even at this date. (Rudden Reply Aff. ¶ 2–5, 8)

■ The Plan amendment effective January 1, 1992, which created the lump sum distribution option, by its terms applied "to all employees who retire[d] or separate[d] from service in 1992 under the NYNEX Force Management Plan ..." with certain exceptions not here relevant. (Donovan Aff. Ex. 1, ¶ (1)) It contained no requirement that an election of this option be made during 1992 or, for that matter, within any specific time. Indeed, the only evidence in the record that even remotely supports such a conclusion is Mr. Donovan's assertions that (a) 1992 FMP retirees were required to submit a Lump Sum Distribution Election Form within 90 days, which is supported by the January 29, 1992 newsletter, and (b) the payment option no longer existed after December 31, 1992.[8] (Donovan Aff. ¶ 3; Littlefield Aff.Ex. 3).

■ Section 402(a)(1) of ERISA, 29 U.S.C. § 1102(a)(1), provides that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." The requirement is designed to "ensure[ ] that plans be governed by written documents filed under ERISA's reporting requirements and that [summary plan descriptions], drafted in understandable language, be the primary means of informing participants and beneficiaries." *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir.1988). *See generally Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, ———————, 115 S.Ct. 1223, 1230–31, 131 L.Ed.2d 94 (1995). Moreover, Section 402(b)(3), 29 U.S.C. § 1102(b)(3), requires that every plan shall "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan...."

As far as this record discloses, the only writing that limited the period within which 1992 FMP retirees could exercise their option to take lump sum distributions from the Plan was the January 29, 1992 newsletter, which was published subsequent to the date

---

8. The latter statement seems inconsistent with the newsletter, the Plan amendment and Mr. Donovan's own statement that the option was available to 1992 FMP retirees. The 90 day period for those who retired in the last quarter of 1992 necessarily extended into 1993.

as of which the Plan amendment establishing the lump sum option was effective. There is no suggestion that the Plan was further amended to incorporate the terms of the newsletter. There is no indication that the newsletter was among the plan documents to which employees were intended to have recourse in order to determine exactly what their rights and obligations were. *See* H.R.REP. No. 93–1280, 93d Cong., 2d Sess. 297, *reprinted in* 1974 U.S.C.C.A.N. 4639, 5038, 5077–78. Nor is there any indication that the contents of the newsletter were contained in the summary plan descriptions that NYNEX was obliged to distribute to beneficiaries. *See* 29 U.S.C. § 1024(b)(1).

To give effect to the restrictive terms of the newsletter, at least on the record now before the Court, would do violence to basic principles of ERISA. There is no evidentiary basis from which the Court properly might conclude that the terms of the newsletter were part of the "written instrument" required by Section 402(a)(1) from which every employee must be able to determine "exactly what his rights and obligations are under the plan." *Algie v. RCA Global Communications, Inc.*, 891 F.Supp. 839, 860 (S.D.N.Y.1994), *aff'd*, 60 F.3d 956 (2d Cir. 1995) (quoting *Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 77 (3d Cir.1991), *cert. denied*, 503 U.S. 938, 112 S.Ct. 1479, 117 L.Ed.2d 622 (1992)).

The newsletter's attachment of conditions and limitations to the option created by the January 1, 1992 plan amendment arguably constituted an amendment of the Plan. But as there is no evidence that the procedures established for amendment of the Plan were complied with in this instance or that the limitations were imposed by the amending authority there specified, the Court cannot conclude that any such amendment was valid. *E.g., Borst v. Chevron Corp.*, 36 F.3d 1308, 1323 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1699, 131 L.Ed.2d 561 (1995)

(plan may not be amended orally or through informal written means); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58–59 (4th Cir.1992), *cert. denied*, 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993) ("[A]ny modification to a plan must be implemented in conformity with the formal amendment procedures and must be in writing."); *Confer v. Custom Engineering Co.* 952 F.2d 41, 43 (3d Cir.1991) (rejecting contention that speech or bulletin board announcement "could effectively change" plan); *Alday v. Container Corp. of America*, 906 F.2d 660, 665–66 (11th Cir.1990), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991) (booklet that "does not describe ... plan's terms, specify its benefits or coverage, or define eligibility or limitations" did not amend plan); *Allen v. West Point–Pepperell, Inc.*, 908 F.Supp. 1209, 1222 (S.D.N.Y.1995) (plan not altered because "changes [can] only be made pursuant to a defined amendment procedure by a defined amending authority.").[9]

In this case, the record does not unequivocally establish that the conditions imposed by NYNEX upon the exercise of the lump sum payment option complied with the writing requirement of Section 402(a)(1) of ERISA or the amendment provisions of · the Plan. Accordingly, NYNEX is not entitled to summary judgment on the ground that Mrs. Ehrlich is not entitled to a lump sum distribution.

### Conclusion

For the foregoing reasons, the cross-motions for summary judgment are denied. The parties will appear for a pretrial conference at 2:00 p.m. on January 10, 1997 in Courtroom 12D.

SO ORDERED.

---

9. This conclusion is consistent with the Second Circuit's recent decision in *Schonholz v. Long Island Jewish Medical Center*, 87 F.3d 72, 78 (2d Cir.1996), where the Court held that an employer may vest benefits in participants by correspondence which is not part of the formal plan documents provided the documents are "memorialized at the same level of formality that [the

employer] chose in promulgating the [plan] in the first place." It is one thing to grant a participant a right the participant does not otherwise enjoy by an informal exchange of letters. It is quite another to attempt to impose limitations on a benefit conferred by a formal amendment to a plan document by means of an impersonal newsletter.