James POTTER, Plaintiff,

v.

ICI AMERICAS, INC., Plan Administrator ICI Americas Inc. Pension Plan, Plan Administrator INAAP Salaried Pension Plan, Subsidiaries of ICI Americas Inc., any & all Other Employee Benefit Plans, Programs & Arrangements Sponsored or Maintained by Deft and the Administrator of Each Such Plan, Program and Arrangement in Which Plaintiff Would Have Been Eligible to Participate at any Time During his Employment with D, ICI Americas Inc. Special Pension Plan for Salaried Employees Located at Indiana Army Ammunition Plant, ICI American Holdings Inc. Pension Plan Trust, Defendants.

No. NA98–0177–C–B/G.

United States District Court,
S.D. Indiana,
New Albany Division.

Oct. 4, 1999.

Karen R. Goodwell, Mattox & Mattox, New Albany, IN, James Isenberg, Segal Isenberg Sales Stewart Cutler, Louisville, KY, for plaintiff.

David W. Crumbo, Brown Todd & Heyburn, New Albany, IN, Rebecca A. Dernberger, Brown Todd & Heyburn, Louisville, KY, for defendant.

## ENTRY GRANTING DEFENDANTS' MOTION TO DISMISS

BARKER, Chief Judge.

Plaintiff, James Potter ("Potter"), has filed a Complaint alleging that he suffered damages resulting from being misclassified as an independent contractor rather than as an employee by the Defendants, ICI Americas, Inc.; Plan Administrator ICI Americas, Inc.; Plan Administrator INAAP Salaried Pension Plan; Subsidiaries of ICI Americas, Inc.; Any and all other employee benefit plans, programs and arrangements sponsored or maintained by Defendant and the Administrator of each such plan, program and arrangement in which Plaintiff would have been eligible to participate at any time during his employment with the Defendants had he been properly classified as an employee rather than as an independent contractor; ICI Americas, Inc. Special Pension Plan for Salaried Employees located at Indiana Army Ammunition Plant; and ICI American Holdings Inc. Pension Plan Trust (collectively "ICI Americas" or "the Defendants"). Potter's complaint seeks benefits arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 11001 *et seq.* ("ERISA"), breach of fiduciary duty owed to Plaintiff both under ERISA for ERISA based plans and under common law for non-ERISA-based plans, interference with Potter's benefits protected by ERISA, breach of contract and a claim for non-ERISA benefits, both under Indiana state law, and a state law claim for wages and benefits under Indiana Code § 22–2–5–2.

The Defendants have moved for dismissal of Potter's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failing to state a claim upon which relief can be granted. For the reasons discussed below, ICI Americas, Inc. et al.'s motion is *GRANTED.*

### Background[1]

Potter worked at a facility owned by ICI Americas, Inc., its subsidiaries or affiliates (collectively "ICI") for a period of at least

---

1. In evaluating this motion, we read the Complaint liberally and "accept[ ] as true the well

33 years. *See* Compl. ¶ 10. In 1993, Potter was notified that he was going to be laid off which ultimately occurred on November 30, 1993. *See id.* ¶ 11. ICI required Potter to sign a document that reclassified him as a contractor if he wished to continue working for them. *See id.* ¶ 12. Potter was not extended the option of remaining with ICI classified as an "employee" so Potter signed the form. *See id.* The next day, on December 1, 1993, ICI contracted with Potter to perform in-house services which were "identical to the work he performed previously." *Id.*

From December 1, 1993 until the day Potter instituted this cause of action, he maintained "an unbroken period of employment with [the] Defendant Companies and has been classified as an independent contractor." *Id.* For the entire period of time that Potter was classified as an independent contractor, his "duties and responsibilities remained identical to those . . . he performed as a common law employee [prior to December 1, 1993]." *Id.* ¶ 13. In fact, Potter alleges that ICI, for the entire time Potter performed work for them subsequent to December 1, 1993,

> control[led] and directed the services performed by the Plaintiff, establish[ed] set hours of work for the Plaintiff, required Plaintiff to comply with instructions in the performance of his work, required Plaintiff to attend regular meetings scheduled by [the] Defendant Companies, required regular written reports with respect to Plaintiff's activities, required Plaintiff to finish time records, furnished an office, and continued to furnish office supplies as needed by the Plaintiff.

*Id.*

On October 16, 1998, Potter's attorney sent the Defendants a letter requesting all benefits to which he was entitled. *See*

Response to Motion to Dismiss at 15–16 ("Response"); Defendants' Memorandum in Support of the Motion to Dismiss, Exhibit B ("Def.Mem. in Supp."). This letter states that the attorney is "prepared to represent Mr. Potter in Federal Court," that the letter "is a proposal for pre-litigation resolution of this matter," and that the letter "is to inform you that on behalf of Mr. Potter, our firm will prepare and file a complaint in federal court." Def.Mem. in Supp., Ex. B.

On November 20, 1998, Potter filed this complaint alleging that he has suffered a number of harms due to this reclassification, including the "loss of future retirement benefits, lost wages, and other benefits available to [the] Defendant Companies' employees." *Id.* ¶ 14 (punctuation added). He states that he was forced to pay the "Defendant companies' portion of the Federal Insurance Contributions Act ("FICA") tax due by employer's [sic] under Section 3111 of the Internal Revenue Code [26 U.S.C. § 3111] on wages paid to employees." *Id.* ¶ 15. He further alleges that ICI "failed to pay taxes due from employers on wages paid to employees under the state unemployment insurance laws." *Id.* ¶ 16. In addition, Potter claims that he was required to pay his own health insurance costs while ICI paid these costs for "other employees" under their "employee health insurance plan." *Id.* ¶ 17. Finally, Potter asserts that he was improperly excluded from participating in "Defendant Plans" and from receiving "other employer-provided benefits" available to eligible employees" ICI. *Id.* ¶ 18.

### Discussion

#### A. *Standard of Review*

On a motion to dismiss pursuant to Rule 12(b)(6), we must determine whether the

---

pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations." *Palda v. General Dynamics Corp.,* 47 F.3d 872, 874 (7th Cir.1995). Therefore, we draw all reasonable inferences from the complaint in favor of the plaintiff. *See Jones v. General Elec. Co.,* 87 F.3d 209,

211 (7th Cir.1996). However, we are not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law. *See R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.,* 895 F.2d 279, 281 (7th Cir.1989).

plaintiff's complaint states a claim upon which relief can be granted. *See* FED. R.CIV.P. 12(b)(6). We may only grant this motion if it is clear that no relief could be granted under any set of facts consistent with the allegations of the complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Jones,* 87 F.3d at 211. This is not a review of the merits of the lawsuit, *see Triad Associates. v. Chicago Hous. Auth.,* 892 F.2d 583, 585 (7th Cir.1989); rather, the motion to dismiss may only be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). Thus, "in order to resist a motion to dismiss, the complaint must at least set out facts sufficient to 'outline or adumbrate' the basis of the claim." *Panaras v. Liquid Carbonic Indus., Corp.,* 74 F.3d 786, 792 (7th Cir.1996). While we generally may not consider matters outside of the pleadings on a motion to dismiss, where the plaintiff supplements his complaint with a brief opposing dismissal, we may consider those allegations as well. *See Hrubec v. National R.R. Passenger Corp.,* 981 F.2d 962, 963 (7th Cir.1992).

### B. Defendants' Motion to Dismiss Count I for Failure to Exhaust Administrative Remedies.

Count I is a claim for benefits, pursuant to § 1132(a)(1)(B), under all "plans, programs and arrangements established or maintained" by the Defendants since December 1, 1993 in which Potter "would have been entitled to participate" if he had been "properly classified as an employee." Compl. ¶ 20. The Defendants respond that this claim should be dismissed because Potter has not exhausted his administrative remedies under the plans at issue. *See* Def.Mem. in Supp. at 11–14. Potter rejoins that exhaustion should be excused

in this case. *See* Response at 13. Because Potter has not exhausted the available administrative remedies and we can find no reason why exhaustion should be excused in this case, we grant the Defendants' motion and dismiss Count I without prejudice to allow Potter to seek redress through the plan administrators.

Section 1132 does not explicitly require exhaustion of administrative remedies as a prerequisite to bringing a civil suit. 29 U.S.C. § 1132; *Kross v. Western Elec. Co.,* 701 F.2d 1238, 1244 (7th Cir.1983). However, the Seventh Circuit has recognized this judicially created doctrine and places the decision to require exhaustion within our discretion. *See Ames v. American Nat'l Can Co.,* 170 F.3d 751, 756 (7th Cir.1999); *Lindemann v. Mobil Oil Corp.,* 79 F.3d 647, 650 (7th Cir.1996); *Smith v. Blue Cross & Blue Shield United,* 959 F.2d 655, 658 (7th Cir.1992); *Powell v. American Tel. & Tel. Communications, Inc.,* 938 F.2d 823, 825 (7th Cir.1991); *Kross,* 701 F.2d at 1244. Exhaustion "supports the important public policy of encouraging private rather than judicial resolution of disputes under ERISA." *Kross,* 701 F.2d at 1246. Moreover, requiring exhaustion serves to "minimize the number of frivolous lawsuits; promote consistent treatment of claims; provide a non-adversarial dispute resolution process; and decrease the cost and time of claims settlement." *Powell,* 938 F.2d at 826; *see also Ames,* 170 F.3d at 756 (quoting *Lindemann* ); *Lindemann,* 79 F.3d at 650 (citing 29 C.F.R. § 2560.503–1).

■ Failure to exhaust administrative remedies is not an element of a claim under ERISA, rather it is an affirmative defense. *See Adamczyk v. Lever Bros. Co.,* 991 F.Supp. 931, 934 (N.D.Ill.1997). To support a motion to dismiss under 12(b)(6), the plaintiff's allegations must clearly point to the existence of an affirmative defense. *See id.* "[T]he fact that a plaintiff has failed to exhaust administrative remedies must appear plainly on the face of the complaint." *Id.*[2] We focus our

---

**2.** Although ordinarily we prefer to consider exhaustion on a motion for summary judgment, *see Wilczynski v. Lumbermens Mut. Cas.*

*Co.,* 93 F.3d 397, 403 (7th Cir.1996); *Adamczyk,* 991 F.Supp. at 934–35, we may consider the failure to exhaust administrative remedies

attention upon whether the plaintiff has sufficiently alleged facts to establish that he has exhausted administrative remedies. *See Wilczynski,* 93 F.3d at 402–03; *Burke v. Local 705 Pension Plan,* No. 98–C–3724, 1998 WL 729604, at *2 (N.D.Ill. Oct.16, 1998); *Schultz v. Quaker Oats Co.,* No. 97–C–6735, 1998 WL 474104, at *6 (N.D.Ill. Aug.3, 1998); *Coats,* 12 F.Supp.2d at 868–69; *Adamczyk,* 991 F.Supp. at 934; *Tarver v. North Am. Co. for Life and Health Ins.,* 919 F.Supp. 1128, 1131 (N.D.Ill.1996).

■ If the plaintiff has not exhausted administrative remedies, in some situations we may exercise our discretion to excuse the requirement. The Seventh Circuit has recognized two exceptions to the exhaustion requirement: (1) that the plaintiff has been denied meaningful access to the plan's claims and review procedure; and (2) that exhaustion would be futile. *See Wilczynski,* 93 F.3d at 402; *Smith,* 959 F.2d at 658–59; *Powell,* 938 F.2d at 826–27. As with our examination of exhaustion itself, we look to determine whether the plaintiff has made sufficient allegations to avail himself of either of these exceptions. *See Wilczynski,* 93 F.3d at 402.

### 1. Exhaustion of administrative remedies.

Most often, a motion to dismiss is denied because the plaintiff has, in fact, made sufficient allegations to support the conclusion that he has exhausted administrative remedies. On a motion to dismiss, bare assertions of exhaustion of administrative remedies have sufficed to survive the motion. *See Adamczyk,* 991 F.Supp. at 934–35 (denying motion to dismiss because amended complaint simply stated that all administrative remedies had been exhausted); *Allen v. Cub Foods Corp.,* No. 96–C–5172, 1997 WL 566365, at *2 (N.D.Ill. Sept.5, 1997) (finding that bare allegations that the plaintiff had made requests for payments and the defendants had refused

to pay were sufficient to survive a motion to dismiss).

However, when the plaintiff does not allege exhaustion of administrative remedies, courts have dismissed the complaints. *See Coats,* 12 F.Supp.2d at 868–69; *Gupta,* 908 F.Supp. at 564; *see also Byrd,* 961 F.2d at 160–61 (holding that district court did not abuse discretion in dismissing plaintiff's complaint when that plaintiff failed to plead exhaustion of administrative remedies). In *Coats,* the court stated that "a review of the plaintiffs' amended complaint reveals that the plaintiffs have not alleged that they pursued *any* administrative remedy concerning the alleged interference of their plan benefits." 12 F.Supp.2d at 869 (emphasis added). In the face of the court's holding that the plaintiffs were required to plead exhaustion or futility of exhaustion, this lack of factual allegations prompted the granting of defendants' motion to dismiss. *See id.* at 870. In *Gupta,* the court dismissed the complaint without prejudice when the plaintiff failed to plead any facts showing that he had exhausted administrative remedies. 908 F.Supp. at 565. Likewise, in *Byrd,* the Eleventh Circuit affirmed the dismissal of a plaintiff's complaint for failing to plead exhaustion because she "did not allege anything about whether she pursued any available relief under the claims procedures terms of . . . [the] benefit plans." 961 F.2d at 160–61.

Reviewing Potter's complaint, we find that this case is remarkably similar to *Coats, Gupta,* and *Byrd.* Potter makes no allegations that he made any claim for benefits. Instead, he simply states that back in 1993 ICI wrongfully classified him as an independent contractor instead of an employee. *See* Compl. ¶ 12. This reclassification provides the sole basis for his claim for benefits under § 1132(a). *See id.* at 20–21. These averments do not qualify even as the "bare assertions" found suffi-

on a motion to dismiss. *See Wilczynski,* 93 F.3d at 401–02; *Coats v. Kraft Foods, Inc.,* 12 F.Supp.2d 862, 868–69 (N.D.Ind.1998) (citing

*Byrd v. MacPapers, Inc.,* 961 F.2d 157, 160–61 (11th Cir.1992)); *Gupta v. Freixenet, USA, Inc.,* 908 F.Supp. 557, 564 (N.D.Ill.1995).

cient in *Wilczynski, Adamczyk, Allen,* and *Tarver.* Thus, on the face of Potter's complaint, we must conclude that he has insufficiently alleged exhaustion of administrative remedies.

■ Even if we include the allegations found in Potter's response brief in our analysis, as the Seventh Circuit allowed in *Hrubec,* 981 F.2d at 963, we find no support for Potter's exhaustion of administrative remedies. In fact, his brief plainly concedes that he did not exhaust administrative remedies. *See* Response at 13 (heading V titled in part "Exhaustion of Administrative Remedies should not be required"). Despite this caption, Potter argues that he has substantially complied with the exhaustion requirement in the form of an October 16, 1998 letter from his attorney to the Defendants. *See id.* at 15–16. Potter contends that his letter sufficed to initiate administrative review. Assuming that is true, the sending of such a letter does not establish that Potter exhausted the administrative remedies required by the Defendants' plans.

An attorney's letter might suffice to initiate administrative review "if a reasonable procedure for filing claims has not been established." *See Powell,* 938 F.2d at 826–27 (citing 29 C.F.R. § 2560.503–1(d)). However, the letter "must be reasonably calculated to alert the employer to the nature of the claim and request administrative review." *Id.* at 827 (citing 29 C.F.R. § 2560.503–1(d)). In *Powell,* the Seventh Circuit rejected the plaintiff's claim that the attorney's letter initiated administrative review. *Id.* at 827. The court noted that the letter "was not an attempt to jump start administrative proceedings, but a threat to take [the defendant] to court if the matter was not settled." *Id.* The plaintiff's attempt to "turn a request for information and threat to sue into a demand for administrative review must be rejected." *Id.*

While Potter's letter stated he was requesting benefits to which he may have been entitled, it, too, failed as an attempt to jump start administrative remedies.

*See* Response at 15–16; Def.Mem. in Supp., Ex. B. As was true in *Powell,* Potter's October 16, 1998 letter states that his attorney is "prepared to represent Mr. Potter in Federal Court," that it was "a proposal for pre-litigation resolution of this matter," and that it was sent "to inform you that on behalf of Mr. Potter, our firm will prepare and file a complaint in federal court." Def.Mem. in Supp., Ex. B. Including this letter as a part of Potter's well-pled allegations does not save Potter's claim; as a threat to sue it is clearly insufficient to sustain the conclusion that Potter was thus requesting administrative review by the Defendants.

### 2. Exceptions to the exhaustion requirement

Although exhaustion is the favored policy, courts will sometimes exercise the discretion to excuse the requirement if either of two, recognized exceptions is met: (1) that the plaintiff was denied meaningful access to the claim and review procedures; or (2) that exhaustion of the administrative procedures would be futile. *See Wilczynski,* 93 F.3d at 402; *Smith,* 959 F.2d at 658–59; *Powell,* 938 F.2d at 826–27. Here, we look to determine whether plaintiff has adequately pled facts that support either exception. *See Wilczynski,* 93 F.3d at 402; *Smith,* 959 F.2d at 658–59; *Powell,* 938 F.2d at 826–27. If Potter's allegations suffice to show that his complaint fits within either of these exceptions, we may exercise our discretion to excuse the exhaustion requirement.

### a. Denial of meaningful access to administrative remedies and procedures

Potter claims that exhaustion should be excused in this case because he has been denied meaningful access to the claims and review procedures of the relevant benefit plans. Courts regularly relieve plaintiffs of the requirement to exhaust administrative remedies when they have been denied meaningful access to administrative review procedures. *See, e.g., Wilczynski,* 93 F.3d at 402 (citing *Smith,* 959 F.2d at 658–59).

This exception is available to plaintiffs who have had claims for benefits denied and defendants have refused access to available appeal procedures, *see Smith*, 959 F.2d at 659; *see also Wilczynski*, 93 F.3d at 403 (holding that the plaintiff was denied meaningful access to a full and fair final appeal of her claim for benefits where the defendants rejected her request for access to her case file and prevented her from reviewing the materials necessary to bring an appeal); *Carter v. Signode Indus., Inc.*, 688 F.Supp. 1283, 1288 (N.D.Ill. 1988) (stating that the undisputed facts established that plaintiffs were denied meaningful access when benefits had been denied, appeals had been submitted to the plan fiduciary, and the plan fiduciary had not passed along the appeals for administrative review); *Lieske v. Morlock*, 570 F.Supp. 1426, 1429 (N.D.Ill.1983) (holding that allegations that the defendants had failed to respond to plaintiff's request for benefits and information concerning payout procedures by the defendants were sufficient to allege that the plaintiffs were denied meaningful access to the administrative procedures), or to plaintiffs who have had claims for benefits denied and were unaware of any available review procedures. *See Smith*, 959 F.2d at 659; *see also Boesl v. Suburban Trust & Sav. Bank*, 642 F.Supp. 1503, 1516 (N.D.Ill. 1986) (finding meaningful access denied where plaintiff had not been told how to file appeal of denial of benefits or that review procedure was available).

This exception presupposes that the plaintiff has made at least some effort to assert his rights under the plan and that some initial decision denying benefits has been made.[3] In situations where the plaintiff has made no request for benefits or no effort to determine what administrative procedures are available, exhaustion cannot be excused. *See Smith*, 959 F.2d at 659; *cf. Robyns*, 130 F.3d at 1236–37. In *Smith*, the court found that plaintiffs had made no requests to review a decision to deny them benefits, which precluded them from successfully arguing that exhaustion should be excused. 959 F.2d at 659.

Likewise, the allegations in Potter's complaint disclose no effort even to ascertain what administrative avenues were available to him. In fact, as we noted in our discussion of his failure to exhaust administrative remedies, *supra*, Potter has made no claim for any of the benefits to which he may be entitled. Potter's first and only meaningful action was to file this lawsuit. Prior to filing his complaint his only action was to have his attorney send a letter to the Defendants proposing "prelitigation resolution" of Potter's request for benefits. Def.Mem. in Supp., Ex. B. In contrast to the plaintiffs in *Wilczynski, Carter, Lieske*, and *Boesl* who had received the defendants' denials of their requests for benefits before filing suit, Potter has not given the Defendants any opportunity to address his concerns outside of our courtroom. If we were to find Potter's efforts sufficient to excuse exhaustion of administrative remedies, we would encourage other employees to seek premature recourse in the courts, without affording plan administrators the initial opportunity to determine whether their plans permit an award of benefits. Potter's failure to take any steps to ascertain what benefits are available to him and to request such benefits preclude his contention that De-

---

3. The cases relied upon by Potter support this characterization of the exception. In *Ehrlich v. Nynex Corp.*, 949 F.Supp. 213 (S.D.N.Y. 1996), the plaintiff had applied for benefits and her request had been denied. *Id.* at 216. The court found that she had never received notice of any administrative appeals procedure or the consequences of failing to pursue it, and therefore was excused from exhausting administrative appeals in the case. *See id.* at 217. Likewise, in *Esfahani v. Medical College*, 919 F.Supp. 832 (E.D.Pa.1996), the defendant had shortened the plaintiff's benefit period, thereby reducing the amount of money he would receive. *Id.* at 836. The plaintiff had repeatedly requested a benefits handbook that would describe the administrative appeal procedures available but it was never provided. *See id.* at 836. The court found that this excused the requirement that the plaintiff exhaust administrative remedies. *See id.*

fendants have denied him meaningful access to the administrative claims and review procedures.

### b. Futility of exhausting administrative remedies

Potter also claims that exhaustion of administrative remedies would be futile in his case. Futility is a second exception that our circuit has recognized which might excuse exhausting administrative remedies. *See Ames,* 170 F.3d at 756; *Robyns v. Reliance Standard Life Ins. Co.,* 130 F.3d 1231, 1238 (7th Cir.1997); *Lindemann,* 79 F.3d at 650; *Smith,* 959 F.2d at 659. However, to come within this exception, Potter must show "that it is certain that [his] claim would be denied, not merely that [he] doubt[s] an appeal would result in a different decision." *Smith,* 959 F.2d at 659; *see also Robyns,* 130 F.3d at 1238 (quoting *Smith* ); *Lindemann,* 79 F.3d at 650 (same). Bare allegations of futility are insufficient to meet this burden. *See Wilczynski,* 93 F.3d at 405. This burden also can not be satisfied by relying solely on conjecture. *See Robyns,* 130 F.3d at 1238.

■ The Seventh Circuit has previously rejected the argument that exhaustion is futile because the named defendant would be the same person making any final administrative determination. *See Ames,* 170 F.3d at 756; *Robyns,* 130 F.3d at 1238. This is the precise argument which Potter now makes. He asks us to share his assumption that one of the named Defendants is also plan administrator for any relevant benefit plans. *See* Response at 18. He maintains that exhaustion is futile because the only way it would be fruitful is if the Defendant "admits that it improperly classified Plaintiff as an independent contractor. ICI would not make this admission which necessitated the filing of this lawsuit." *Id.* This argument is not unlike the one made in *Ames* and *Robyns,* and thus we must reject it as well. Even if we were to assume that the Defendant is

"predisposed to deny" the claim, that would not assure that the claim was certain to fail. *Robyns,* 130 F.3d at 1238. Because Potter has not demonstrated the futility of utilizing the administrative processes to apply for whatever benefits he may be entitled to, he is not excused from his exhausting administrative remedies in this case.

### c. Additional exceptions asserted by Potter

■ Potter attempts to fashion a third exception to the exhaustion requirement. He states that exhaustion should be excused because the resolution of his legal claims rests on an interpretation of ERISA and not on the plans themselves; administrative review is thus unnecessary. This argument has been explicitly rejected in prior cases decided by the Seventh Circuit. *See Lindemann,* 79 F.3d at 650; *Kross,* 701 F.2d at 1245. The Court of Appeals holds that policies underlying exhaustion are served "whether the plaintiff structures [his] claim to seek the actual benefits allegedly interfered with, or to seek other remedies.... These advantages outweigh a plaintiff's relatively minor inconvenience of having to pursue [his] claims administratively before rushing to federal court." *Lindemann,* 79 F.3d at 650 (noting agreement on this issue with the First, Second, Fourth, Sixth, Ninth, and Eleventh Circuits and citing cases). The simple fact that a plaintiff asserts a claim allegedly based on an interpretation of ERISA, as opposed to a specific benefit plan, does not excuse exhaustion of administrative remedies. *See id.; Kross,* 701 F.2d at 1245; *Allen v. American Home Foods, Inc.,* 644 F.Supp. 1553, 1563 (N.D.Ind.1986). We of course follow the Seventh Circuit's directive and thus reject Potter's request that we excuse him from the exhaustion requirement based on the fact that his claim rests on an interpretation of ERISA, rather than the plans themselves.[4]

---

4. Potter also asserts that exhaustion should be excused in this case because he has substantially complied with the requirement through his attorney's October 16, 1998 letter. *See*

Response at 15–16. We have already considered this argument and rejected it. *See supra.* Having determined that the letter is insufficient to start the process moving, it is obvi-

Public policy also supports requiring Potter to exhaust his administrative remedies as a condition precedent to bringing this suit. Parties benefit from an opportunity to resolve matters on their own. Clearly, the process encourages "private rather than judicial resolution" of disputes. *Kross,* 701 F.2d at 1246. In addition, the exhaustion requirement minimizes the possibility of frivolous lawsuits and promotes non-adversarial dispute resolution procedures. *See Powell,* 938 F.2d at 826; *Ames,* 170 F.3d at 756 (quoting *Lindemann* ); *Lindemann,* 79 F.3d at 650 (citing 29 C.F.R. § 2560.503–1). Finally, allowing parties to resolve matters prior to litigation provides the plan administrators an opportunity to assemble a factual record that lessens the time and resources a court must otherwise expend in the event this case eventually reaches its doorstep. *See Lindemann,* 79 F.3d at 650. For all these reasons, we *GRANT* the Defendants' motion to dismiss Count I. However, this dismissal is without prejudice, allowing Potter to file a new complaint in due course if that action becomes necessary.

### C. *Defendants' Motion to Dismiss Counts II and III due to the Running of the Statute of Limitations.*

In Count II of his Complaint, Potter alleges breach of fiduciary duties by the Defendants, both for ERISA-based plans under § 1104 and for non-ERISA-based plans under common law. Potter claims that the Defendants, to the extent they are administrators of the Defendants' benefit plans, "willfully misclassif[ied] Plaintiff as an independent contractor, thereby improperly excluding his participating in, and depriving him of benefits under, the Defendant Plans." Compl. ¶ 25. Count III asserts that the same actions interfered with Potter's protected benefits under ERISA, in violation of § 1140. *Id.* ¶ 27. The Defendants rejoin that both the ERISA-based claims under Count II and Count III are barred by the statute of limitations, *see* Def.Mem. in Supp. at 5–6, and that the common-law-based claim un-

der Count II is either not recognized under Indiana law or is barred by the Indiana statute of limitations, pursuant to Ind.Code § 34–11–2–1. *See* Defendants' Reply to Plaintiff's Response to Motion to Dismiss at 3 ("Def.Reply").

### 1. *Breach of fiduciary duty under ERISA*

We accept as true, as we must, Potter's properly supported allegation that the Defendants breached a fiduciary duty owed to him for which they would be liable under ERISA. *See* 29 U.S.C. §§ 1104, 1109(a). The applicable statute of limitations for a breach of fiduciary duty is

the earlier of —

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113 (emphasis added).

Potter has not asserted a claim for fraud or concealment. Thus, the limitations period imposed by either § 1113(1) or 1113(2) controls this claim. The earliest date that this cause of action arose was when the Defendants actually reclassified Potter as an independent employee on December 1, 1993. *See* Compl. ¶ 12. Obviously, the six-year limitation provided for in § 1113(1) does not preclude Potter's suit which he filed on November 20, 1998, slightly less than five years later. The more opaque issue for us at this juncture is whether the three-year limitation imposed by § 1113(2) precludes Potter's suit; that is, whether Potter can prove any set of facts in support of his claim that would

ously insufficient as "substantial compliance" with the procedures.

show he lacked actual knowledge of the breach or violation before November 20, 1995.

The Seventh Circuit has defined "actual knowledge" in the context of § 1113(2) as "knowledge of the facts or transaction that constituted the alleged violation." *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir.1992). To trigger the three-year statute of limitations, "a plaintiff must know of the essential facts of the transaction or conduct constituting the violation." *Id.* The Seventh Circuit has also ruled that the date of the "violation" at issue occurs when the adverse decision is made, not when its financial consequences are felt. *See Librizzi v. Children's Mem'l Med. Ctr.*, 134 F.3d 1302, 1306 (7th Cir. 1998). It is the adverse employment decision *itself* that is the violation, not the failure to correct that decision. *See id.* However, starting the clock running does not necessarily mean that it has been running continuously. *See id.* at 1307. "Time may be tolled, or the adverse party may be estopped to rely on the period of limitations." *Id.* Still, the plaintiff must plead some set of facts to show estoppel or to indicate that the statute of limitations has been tolled for any period of time *See id.*

In *Librizzi*, the plaintiff received "poor advice" from the defendant about his eligibility for certain benefits in July 1990. *Id.* at 1304. After selecting early retirement, the plaintiff started receiving benefits in February 1991 and asked the plan to reclassify him in October 1991. *See id.* He did not file suit until April 1996, approximately four and a half years after October 1991, which the court found to be the latest date he could have learned of the erroneous advice that he had received. *See id.* Librizzi contended that he did not have "actual knowledge" of a violation until the defendant had finally broken off negotiations regarding the benefits in March 1996. *See id.* at 1306. Thus, he claimed that § 1113(2)'s three-year period did not begin until he knew the financial outcome of the adverse decision. *See id.* at 1307.

The court did not accept this view. It found that Librizzi "learned no later than October 1991 that he could have done better financially, but the employer refused to make amends ... [a]ctual knowledge in October 1991 started the three-year period of § 1113(2)." *Id.* In addition, the court noted that Librizzi had made no pleading or argument that laid the foundation for a claim of estoppel or tolling the period of limitations. *See id.* (citing *Singletary v. Continental Ill. Nat'l Bank and Trust Co.*, 9 F.3d 1236, 1241 (7th Cir.1993)). To accept the contention that Librizzi's knowledge of the violation did not occur until the defendant ultimately failed to cure the violation, the court reasoned, would "destroy the structure of the statute, which gives participants the shorter of two periods, one measured *from the violation* and the other *from knowledge.*" *Librizzi*, 134 F.3d at 1307 (emphasis added).

■ We accept Potter's allegation that the Defendants breached a fiduciary duty owed to him when he was reclassified as an independent contractor on December 1, 1993. *See* Compl. ¶ 12. Any actions constituting a breach of a fiduciary duty constitute the "violation." There is no assertion that the Defendants in any way concealed the fact of Potter's reclassification. Potter admits that he knowingly signed a form stating that he would be an independent contractor on November 30, 1993. *See* Compl. ¶ 12. He obviously knew the facts of the Defendants' decision at that time. Thus, the limitations period began to run on Potter's breach of fiduciary duty claim on December 1, 1993.

Nothing in Potter's Complaint indicates any basis to toll the limitations period or a basis for estopping Defendants from asserting the statute of limitations as an affirmative defense. Therefore, when Potter waited until November 20, 1998 to file his lawsuit, § 1113(2)'s three-year statute of limitations had run. The ERISA-based breach of fiduciary duty claim must thus be dismissed.

### 2. Common law breach of fiduciary duty.

Count II asserts a generalized breach of fiduciary duty under common law for those plans not covered by ERISA. *See* Compl. ¶ 25. The Defendants respond that Indiana law does not recognize a common law breach of fiduciary duty claim and in the event such a cause of action does exist, it would arise from Potter's former employment with the Defendants which ended on December 1, 1993. *See* Def. Reply at 2–3. The statute of limitations is two years, pursuant to Ind.Code § 34–11–2–1, and expired on December 1, 1995.

Potter does not provide us with a legal source for this claim nor does he clarify the factual basis for it. *See* Response at 2–3. He simply states that the statute of limitations is two years and that the complaint "was therefore timely filed." *Id.*

Even if we were to conclude that Potter's complaint is sufficient to satisfy the liberal standards of notice pleading, we must hold that his failure to respond meaningfully to the Defendants' motion to dismiss on this basis is fatal to his claim. Plaintiff's complaint need not contain the legal predicate for his claim; nonetheless, "when presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action. The federal courts will not invent legal arguments for litigants." *Stransky v. Cummins Engine Co.,* 51 F.3d 1329, 1335 (7th Cir.1995); *see also Teumer v. General Motors Corp.,* 34 F.3d 542, 545–46 (7th Cir.1994) (plaintiff waived legal theory when he "fail[ed] ... to present legal arguments linking the claim described in the complaint to the relevant statutory (or other) sources for relief"); *Farnham v. Windle,* 918 F.2d 47, 51 (7th Cir.1990) (plaintiff's failure to brief legal theories supporting his claim in response to motion to dismiss constituted waiver); *Carpenter v. City of Northlake,* 948 F.Supp. 759, 764 (N.D.Ill.1996) (citing *Stransky* ). Defendants challenge Potter's legal entitlement to relief on this theory, *see* Def. Reply at 2, 3, but Potter has entirely failed to respond. This is a sufficient basis for us to dismiss the common law, breach of fiduciary duty portion of Count II.

 In the absence of any indication as to the legal or factual predicate for his claim, we are left to assume that the common law "breach" was the same as the breach for the purpose of his ERISA claim. As we have already determined, this breach occurred on December 1, 1993. Section 34–11–2–1 of the Indiana Code provides the necessary statute of limitations for all "[e]mployment related actions," allowing a plaintiff two years from the date of the "act ... complained of." *Id.* Therefore, this limitations period also expired on December 1, 1995 and bars Count II's claim of breach of fiduciary duty under the common law.

Since we find that any breach of fiduciary duty claim asserted by Potter is barred by the applicable statutes of limitations, the Defendants' motion to dismiss Count II is *GRANTED* with prejudice.

### 3. Interference with protected benefits under ERISA.

Potter asserts in Count III that the same conduct described above gives rise to a claim for interference with protected benefits under § 1140. *See* Compl. ¶ 27. The Defendants again assert the statute of limitations as a bar to Potter's claim. *See* Def.Mem. in Supp. at 6–7. In response, Potter argues that the failure to classify him as an employee and the subsequent exclusion from benefits rightfully owed him is a "continuing wrong" that continued from the day he was reclassified until the day he ultimately stopped providing services for ICI in 1998. *See* Response at 3–4. Potter asserts that since he provided his services to ICI pursuant to a series of employment agreements, the last of which was effective through July 1, 1998, *see id.* at 4, his complaint was timely filed.

As with Count II, we again must determine what statute of limitations applies to Count III and what events trigger the limitations period. Both parties agree

that, for the purposes of a § 1140 claim, ERISA directs us to borrow the statute of limitations period from the most analogous state law claim. *See* § 1140; *Teumer,* 34 F.3d at 546. Both parties also agree that the proper statute of limitations is found in Ind.Code § 34–11–2–1. *See Coats,* 12 F.Supp.2d at 865; *Ahnert v. Delco Electronics, Corp.,* 982 F.Supp. 1320, 1327 (S.D.Ind.1997); *see also Bollenbacher v. Helena Chem. Co.,* 934 F.Supp. 1015, 1030 (N.D.Ind.1996). As discussed above, § 34–11–2–1 sets out a two-year statute of limitations from the date of the "act ... complained of." *Id.* Thus, the only issue with which we must concern ourselves is determining the correct triggering event for the limitations period.

██ The starting point for determining when a cause of action accrues is the unlawful conduct alleged. *See Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1138 (7th Cir.1992). Section 1140 makes it unlawful to interfere with the participant's ability to meet the qualifications of benefit plans. *See id.* at 1133 (citing *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)). Since this section is aimed at preventing employers from taking action for the purpose of preventing participation in a plan, the accrual of a claim turns on the timing of any such action. *See Tolle,* 977 F.2d at 1139–40; *see also Bunnion v. Consolidated Rail Corp.,* No. Civ.A. 97–4877, 1998 WL 32715, at *3 (E.D.Pa. Jan.6, 1998) (noting that § 1140 was enacted "to preclude an 'unscrupulous employer' from firing their employees in order to prevent their receipt of ERISA benefits.") (quoting *DeWitt v. Penn–Del Directory Corp.,* 106 F.3d 514, 522 (3d Cir.1997)). The cause of action begins to accrue when the unlawful action takes place and the plaintiff discovers the injury. *See Teumer,* 34 F.3d at 550 (citing *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1990)); *Tolle,* 977 F.2d at 1139. Thus, it is the adverse employment decision, that is, the change in employment status that indicates that the employer may be discriminating against a plaintiff's ability to collect benefits, that starts the clock ticking, *not* when a plaintiff is ultimately denied those benefits. *See Tolle,* 977 F.2d at 1139–40.

When the adverse employment decision is a termination or lay-off, the time it has been made and communicated to the plaintiff starts the running of the statute of limitations. *See Teumer,* 34 F.3d at 550 (cause of action accrued when plaintiff was laid off); *Tolle,* 977 F.2d at 1141 (cause of action accrued when plaintiff's termination was communicated to him); *see also Seaman v. Arvida Realty Sales,* 985 F.2d 543, 547 (11th Cir.1993) (finding that termination could have violated § 1140 where the plaintiff was terminated for refusing to be reclassified as an independent contractor and losing the right to benefits she had previously enjoyed); *Ahnert,* 982 F.Supp. at 1326 (stating that § 1140 is triggered when an employment action is taken in order to defeat benefits). However, these are not the only adverse actions which courts have determined to trigger the limitations period.

In *Huber v. Arvida Realty Sales,* Docket No. 93–706–CIV–T–17, 1996 WL 420883 (M.D.Fla. Mar.27, 1996), the district court was faced with an issue factually similar to the case at bar. In that case, the plaintiff had been working as an employee sales associate and was informed that she was being reclassified as an independent contractor. *See id.* at *2. Prior to this change, the defendant had covered job-related expenses, including the cost of benefits, and allowed the employees to participate in health insurance plans and 401(k) plans. *See id.* Once the plaintiff was reclassified, she became responsible for these expenses and no longer eligible for certain benefits. *See id.* The court discussed the statute of limitations, but only in the context of when the plaintiff had been notified that she was being reclassified as an independent contractor. *See id.* at *5. Since it was possible that she had been first informed of the conversion within Florida's statute of limitations period, the court denied the defendant's motion for summary judgment. *See*

*id.* at *6; *see also Gitlitz v. Compagnie Nationale Air France,* 129 F.3d 554, 559 (11th Cir.1997) (discussing plaintiffs' § 1140 claim by looking at whether defendant's reclassification from employees to independent contractor interfered with their ERISA benefits); *Bunnion,* 1998 WL 32715, at *3–*4 (finding that plaintiff stated a cause of action where the defendant had reclassified the plaintiff employees as independent contractors).

■ In the case at bar, ICI laid off Potter as an employee on November 30, 1993, *see* Compl. ¶ 11, and rehired him after classifying him as an independent contractor on December 1, 1993. *See id.* ¶ 12. Moreover, Potter alleges that this reclassification caused him to suffer a loss of benefits to which he otherwise would have been entitled. *See id.* ¶ 14. This reclassification is the "unlawful action" to which § 1140 is directed. *Teumer,* 34 F.3d at 550. Like the plaintiffs in *Gitlitz, Huber,* and *Bunnion,* Potter has sufficiently alleged that he suffered an adverse employment action at the hands of the Defendants when they reclassified him.

As in *Tolle,* Defendants' actions served as an indication to Potter that he was being discriminated against in terms of his ability to collect benefits as of the day he was reclassified. As in *Tolle,* it was this initial reclassification of Potter that started the statute of limitations period, even though subsequent actions by the Defendants may have occurred following this change. Potter's attempt to characterize this claim as a continuing wrong is inconsistent with Seventh Circuit directives with regard to a claim for interference with protected benefits and is thus rejected.

Because the allegedly discriminatory change in employment status occurred and was communicated to Potter, at the latest, on December 1, 1993, *see* Compl. ¶ 12, that date marks the beginning of the statute of limitations period on Potter's interference with benefits claim under § 1140. *See Teumer,* 34 F.3d at 550 (citing *Cada,* 920 F.2d at 450). Since ERISA borrows Indiana's two year statute of limitations

period from § 34–11–2–1, *see Coats,* 12 F.Supp.2d at 865; *Ahnert,* 982 F.Supp. at 1327, the limitations period on Potter's § 1140 claim expired on December 1, 1995, almost three years prior to the date of this lawsuit. Therefore, Potter's interference with benefits claim in Count III is barred by the statute of limitations, and Defendants' motion to dismiss Count III is *GRANTED* with prejudice.

### D. Defendants' Motion to Dismiss Counts IV and V

Counts IV and V are state law claims. While ERISA provides us subject matter jurisdiction over Potter's ERISA claims, *see* 29 U.S.C. § 1132(e)(1), we may exercise supplemental jurisdiction over Potter's state law claims only if they are so related to his ERISA claims "that they form part of the same case or controversy." 28 U.S.C. § 1367. Since we have dismissed all three of Potter's ERISA claims, the better course is for us to decline to exercise supplemental jurisdiction over his remaining state law claims. *See* § 1367(c)(3); *Alonzi v. Budget Constr. Co.,* 55 F.3d 331, 334 (7th Cir.1995); *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir.1993); *Young v. Easter Enters., Inc.,* 915 F.Supp. 58, 72 (S.D.Ind. 1995). Accordingly, we *GRANT* the Defendants' motion to dismiss Counts IV and V without prejudice.

### Conclusion

For the reasons discussed above, we *GRANT* the Defendants' motion to dismiss Plaintiff's Complaint. Counts II and III are dismissed with prejudice. However, Counts I, IV, and V are dismissed without prejudice.